Sealed

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. [              ]

## 17-23549

CIV-UNGARO

| | |
|---|---|
| In re:<br><br><br>Application of ROMAN VIKTOROVICH<br>TROTSENKO for an Order, Pursuant to 28 U.S.C.<br>§ 1782 to Obtain Discovery from DMITRY<br>VALERIEVICH LUTSENKO, MIRAX<br>DEVELOPMENT LLC, SKY CONCIERGE BY<br>MIRAX LLC, AND SKY REALTY BY MIRAX<br>LLC for Use in a Foreign Proceeding | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MAGISTRATE JUDGE
O'SULLIVAN

**APPLICANT ROMAN VIKTOROVICH TROTSENKO'S *EX PARTE* APPLICATION
FOR AN ORDER, PURSUANT TO 28 U.S.C. § 1782, TO OBTAIN DISCOVERY FROM
DMITRY VALERIEVICH LUTSENKO, MIRAX DEVELOPMENT LLC, SKY
CONCIERGE BY MIRAX LLC, AND SKY REALTY BY MIRAX LLC FOR USE IN A
FOREIGN PROCEEDING AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Based upon the attached Declarations of Michael G. Pikis and Nigel K. Rawding and the

exhibits attached thereto; and the incorporated Memorandum of Law in support of this *ex parte*

application and the exhibits attached thereto, Roman Viktorovich Trotsenko ("Trotsenko" or the

"Applicant") hereby moves the Court to grant this Application and enter the Proposed Order

(attached as Exhibit 1 hereto) pursuant to 28 U.S.C. § 1782: (i) authorizing the Applicant to

serve Mirax Development LLC, Sky Concierge by Mirax LLC, and Sky Realty by Mirax LLC

(collectively the "Corporate Discovery Subjects) and Dmitry Valerievich Lutsenko ("Lutsenko,"

and together with the Corporate Discovery Subjects, the "Discovery Subjects"), with the

subpoenas attached as Exhibits 2-5; (ii) directing each Discovery Subject to preserve and

produce the documents responsive to the applicable subpoena in its possession, custody and control; and (iii) directing Lutsenko to provide the deposition testimony requested in the subpoena attached as Exhibit 5 hereto.

## PRELIMINARY STATEMENT

Applicant Roman Viktorovich Trotsenko, by and through his undersigned attorneys, respectfully seeks an order pursuant to 28 U.S.C. § 1782 for discovery from (i) Mirax Development LLC; (ii) Sky Concierge by Mirax LLC; (iii) Sky Realty by Mirax LLC; and (iv) Dmitry Valerievich Lutsenko for use in legal proceedings pending in Cyprus (the "Cyprus Litigation") and in a pending arbitration in the London Court of International Arbitration ("LCIA") (the "LCIA Arbitration," and, together with the Cyprus Litigation, the "Foreign Proceedings").

The dispute underlying the Foreign Proceedings concerns the development of Federation Tower—a real estate development project intended to become the largest skyscraper complex in Moscow (the "Project"). In 2013, Roman Trotsenko acquired controlling shares of the Project from the Mirax group, of which Lutsenko was a senior manager. Trotsenko then hired Lutsenko to manage the building, development, marketing, and monetization of the Project (the "Project Manager"), a relationship outlined in the Project Management Agreement ("PMA"). Lutsenko failed to perform his contractual obligations under the PMA and instead became a fugitive from justice when he fled from the Russian Federation to Miami in 2015 to escape criminal prosecution on charges unrelated to the Project. Once in the United States, Lutsenko abandoned the Project, causing Trotsenko significant losses.

In July 2017, Lutsenko commenced arbitration in the LCIA seeking more than $41 million as liquidated damages and asserting that Trotsenko, and entities under his control, had breached their obligations under the PMA. A week later, Lutsenko commenced litigation in

2

the Nicosia District Court in Cyprus (the "Cyprus Court") seeking to freeze Trotsenko's assets. On August 31, Trotsenko submitted his response to the LCIA and advanced a counterclaim against Lutsenko, seeking approximately $100 million in damages for Lutsenko's breach of contract and failure to perform in a timely fashion. Trotsenko anticipates filing an application in Cyprus seeking to freeze Lutsenko's assets by early October.

Lutsenko's performance of his contractual obligations both before and after he fled Russia for Miami is at the core of the parties' dispute in the Foreign Proceedings. Trotsenko alleges that Lutsenko underperformed from the start and that, once in Miami, Lutsenko completely abandoned his responsibilities to the Project, while Lutsenko asserts that he attended to those responsibilities on a daily basis. In this action, Trotsenko seeks documents and testimony from Lutsenko and documents from three Limited Liability Companies of which Lutsenko is a managing member, concerning primarily Lutsenko's performance of the PMA, including while he has resided in Miami. As such, evidence of Lutsenko's conduct—including any communications evidencing Lutsenko's performance (or lack thereof) of his contractual obligations—are located within this District and are properly subject to discovery pursuant to Section 1782. As demonstrated below, the Application should be granted.

First, Trotsenko satisfies each statutory requirement for 1782 discovery. Trotsenko is an interested person in the Foreign Proceedings, in which Lutsenko has brought claims against Trotsenko seeking damages in excess of $41 million, and in which Trotsenko has asserted a counterclaim seeking approximately $100 million in damages. Each of the Discovery Subjects is found in this District, and the requested discovery is for use in the Foreign Proceedings. The requirements of Section 1782 are accordingly satisfied.

3

Second, the discretionary factors set out by the Supreme Court in <u>Intel Corp. v.</u> <u>Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 264-65 (2004) favor this Court granting the requested discovery.  Lutsenko is located in the United States, beyond the reach of either the arbitral tribunal or the Cyprus Court, making Section 1782 discovery the most effective and efficient way to obtain evidence that is clearly relevant to the Foreign Proceedings.  Moreover, the arbitral tribunal and the Cyprus Court will accept assistance provided by a United States court as those foreign tribunals do not prohibit the discovery sought in this Application and because the discovery sought through the Application is relevant to the issues being litigated in the Foreign Proceedings. Finally, the requests are modest and seek documents and testimony from an individual and his corporate holdings located within the United States, making that evidence most accessible through a U.S. court.[1]

In short, the Discovery Subjects have information that is highly relevant to the claims asserted in the Foreign Proceedings, and the Court should grant Trotsenko the discovery he seeks to obtain this information.  Furthermore, granting the Application will foster Section 1782's twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries to similarly assist our courts.  Trotsenko's application should be granted.

---

[1]     An *ex parte* application pursuant to 28 U.S.C. § 1782 is appropriate and is the typical procedure when invoking this statute. <u>See, e.g.</u>, <u>In re Chevron Corp.</u>, No. 1:10-MI-0076-TWT-GGB, 2010 WL 8767265, at *5 (N.D. Ga. Mar. 2, 2010) ("*ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.") (internal citations omitted).

## FACTUAL BACKGROUND

### A.    The Parties

Roman Viktorovich Trotsenko is a citizen of the Russian Federation, who resides in Moscow, Russia and is engaged in construction, logistics, and airport management.  Among his other business interests, since 2013, Trotsenko has been the controlling shareholder of CJSC Bashnya Federatsiya, the developer of a skyscraper complex located at 12 Presnenskaya Naberezhnaya in Moscow.  See Rawding Decl. Ex. C (Respondents' Response and Counterclaim to the Request for Arbitration, dated August 31, 2017) ("Counterclaim") ¶¶ 3, 8.

Dmitry Valerievich Lutsenko is a citizen of the Russian Federation, who resides in Miami, Florida at 6001 Laguna Path S, Miami Beach, Florida.  Lutsenko is the former Deputy President of the Mirax Group ("Mirax"), the owner and developer of the Project prior to its acquisition by Trotsenko.  In 2012, Russian law enforcement authorities commenced an investigation against the senior managers of Mirax, including Lutsenko, alleging that Mirax, and its senior managers, were engaged in fraud and embezzlement.  See Pikis Decl. Ex. C ¶ 31 (Affidavit of Alexey Afanasiev, dated July 19, 2017) ("Afanasiev Aff.").  In July 2015, Lutsenko fled the Russian Federation to Miami, to escape criminal charges in Russia.  Id.  He has since resided in Miami as a fugitive from justice.  On information and belief, the criminal charges against Lutsenko remain pending, with the Russian government seeking Lutsenko's arrest on charges of "large scale fraud" through Interpol, thereby constraining his ability to travel internationally.  See Pikis Decl. Ex. D (Search Results of the Interpol Red Notice Database).

Discovery subjects Mirax Development LLC, Sky Concierge By Mirax LLC, and Sky Realty By Mirax LLC are corporate entities organized under Florida law, with their

primary place of business at 6001 Laguna Path S, Miami Beach, Florida—the very address at which Lutsenko resides, and each identifies Lutsenko as a managing member. See Ex. 6 (Entity Information from the Florida Secretary of State, Division of Corporations). Each of the Corporate Discovery Subjects is under the control of Lutsenko, as he is a managing member of each and they are registered at his home address in Miami. Moreover, Trotsenko believes that Lutsenko used phone numbers registered to the Corporate Discovery Subjects to conduct business, including business possibly related to the Project.

### B.   The Business Arrangement Between The Parties

#### 1.   The Project Management Agreement

In 2013, Trotsenko acquired the Project from Mirax, who was facing financial difficulties and could no longer develop the Project. On May 28, 2013, Trotsenko and Lutsenko entered into an agreement (the "Pre-PMA") pursuant to which Lutsenko agreed (i) to conduct a technical and financial audit of the Project to determine whether he wanted to accept the role of the Project Manager, (ii) to transfer his interest in two floors of the Project to Trotsenko, and (iii) that his compensation if he agreed to undertake the role of Project Manager would be 20% of the Project's net profit. Shortly thereafter, Lutsenko agreed to accept the role of Project Manager.[2]

On December 6, 2013, Trotsenko and MRC Skyscrapers Management B.V., a company controlled by Trotsenko and Lutsenko, entered into the PMA. See Ex. 7 (PMA).

---

[2]      While the parties negotiated the Project Management Agreement, Lutsenko commenced his new position. Shortly after agreeing to the Pre-PMA, Lutsenko hired a general contractor, SK Stolitsa-Development (the "Technical Customer"), to lead the development of the Project. In so doing, Lutsenko acted on behalf of ZAO Federation Tower, a company ultimately wholly owned by Trotsenko, the corporate entity that owns the Project, and the ultimate consumer of the construction and marketing services that Lutsenko was responsible for managing.

Pursuant to the PMA, Lutsenko was obligated to supervise the Project's construction, including (without limitation):

- Ensuring the selection and retention of required suppliers, contractors, and service providers;

- Overseeing and managing the performance of such suppliers, contractors, and service providers to ensure timely performance;

- Obtaining all required permits for the Project's completion;

- Managing the Project's construction;

- Marketing the Project to potential customers; and

- Monetizing the Project by successfully selling and/or leasing space within the Project.

In fulfilling his obligations under the PMA, Lutsenko was permitted to use vendors, including the Technical Customer.

In exchange, Lutsenko was to be paid a management fee calculated in accordance with a formula set out in Clause 3.1 of the PMA, which, according to Lutsenko, entitled him to receive 20% of the profits associated with the project.

2.     Lutsenko Fails To Perform His Obligations Under the PMA

Lutsenko's performance lagged from the start.  To ensure that the parties performed their obligations, the PMA included a Project Realization Schedule that established dates by which the Project was to have achieved certain milestones.  See Ex. 7 (PMA).  The Project's progress against the Project Realization Schedule met delays soon after the PMA was signed.  Indeed, by April 2014—a mere four months after the parties signed the PMA—Lutsenko had achieved sales of only 60% of the anticipated revenues.  See Rawding Decl. Ex. C (Counterclaim) ¶ 15.

While Lutsenko's performance lagged behind schedule in 2014, it became non-existent by mid-2015. See id. ¶ 16. By 2015, Russian law enforcement officials' investigation into criminal conduct within the Mirax Group, including fraud and embezzlement unrelated to the Project, was gaining steam. Fearing arrest, Lutsenko fled Russia for Miami in July 2015. See Pikis Decl. Ex. C (Afanasiev Aff.) ¶ 31. Once in Miami, Lutsenko completely abandoned his responsibilities as the Project Manager under the PMA. See Rawding Decl. Ex. C (Counterclaim) ¶ 16.

As a result, construction on the Project is well behind schedule. Under the PMA, Lutsenko was to ensure the commissioning of the Project by December 31, 2015 and the sale of all units by December 31, 2016. Lutsenko met neither deadline, and the Project is now more than 2.5 years behind schedule. See id. ¶ 29. The Project's costs, meanwhile, have continued to climb, and the Project is now over budget by millions of dollars.

C.   **The Parties' Dispute**

1.   The LCIA Arbitration

On April 12, 2017, Lutsenko alleged that Trotsenko, and certain entities under his control, breached the PMA, by, *inter alia*, failing to deliver certain management accounts and support documents, failing to approve certain financial models, and failing to appoint Lutsenko as chairman of the Project's board of directors. On June 20, 2017, after Trotsenko denied the breaches alleged by Lutsenko, Lutsenko terminated the PMA and demanded that Trotsenko pay him $41,114,886 in liquidated damages. Three weeks later, Lutsenko commenced the LCIA Arbitration. See Rawding Decl. Ex B (Request for Arbitration, dated July 12, 2017).

On August 31, 2017, Trotsenko submitted his response in the LCIA Arbitration denying Lutsenko's claims. At the same time, Trotsenko asserted a counterclaim against

Lutsenko on the basis that the years-long delay in the completion of the Project violated Clause 6.5 of the PMA, which allows for compensation for losses resulting from delays of greater than six months.  In addition, Trotsenko alleges that Lutsenko failed to comply with his obligations under the PMA by failing to:

- ensure selection of required suppliers, contractors, and providers of works and service;

- oversee the performance of those engaged;

- properly manage the Project for timely realization as required by Clause 5.1 of the PMA;

- provide Trotsenko quarterly Project Progress Reports as required by Clause 5.2 of the PMA;

- manage sales in accordance with the initial Financial Model as required by Clause 5.3 of the PMA;

- carry out the full range of activities for the Project realization ensuring that all contracted providers of works and services met contract terms, monitoring deadlines, and agreed budgets as required by Clause 5.2.2 of the PMA;

- act in a responsible manner and in good faith as required by Clause 5.8 of the PMA.

In total, Trotsenko seeks approximately $100 million in damages from Lutsenko.  See Rawding Decl. Ex. C (Counterclaim) ¶¶ 27-31.

        2.     The Cyprus Litigation

      Meanwhile, on July 19, 2017, Lutsenko commenced an action in Cyprus against Trotsenko, MRC Skyscrapers Management B.V., New Tower Limited, and two Cypriot corporate entities of which Trotsenko is the ultimate beneficial owner—Harptree Ventures

Limited[3] and Viewmont Limited. The action seeks to encumber Trotsenko's assets in Cyprus pending a judgment in the LCIA Arbitration. Specifically, the injunction requested by Lutsenko would prohibit Trotsenko, and entities under his control, from alienating or encumbering the assets of the respondents and from reducing net asset value of the respondents below $42 million, the amount claimed in liquidated damages. See Pikis Decl. Ex. B (*Ex Parte* Application for Injunctive Relief, dated July 19, 2017). The Cyprus Court granted that application on July 24, 2017. See Pikis Decl. Ex. G (Interim Injunction Order, dated July 24, 2017) ("Injunction Order"). Trotsenko plans to challenge that injunction order in the Cyprus Court by objecting by the current deadline of October 6, 2017.

  In addition, by early October, Trotsenko anticipates filing his own application to freeze Lutsenko's assets in Cyprus in aid of the LCIA Arbitration. Such pre-award injunctions in aid of arbitrations are common in Cyprus. See Pikis Decl. ¶ 14. In so doing, Trotsenko will need to establish Lutsenko's ultimate ownership of certain companies, a task made difficult by Lutsenko's extensive use of numerous holding companies incorporated in various jurisdictions around the globe.

## REQUESTED DISCOVERY

  Through this application, Trotsenko seeks narrow categories of documents relevant to the Foreign Proceedings that are in the possession, custody, and control of Lutsenko and the Corporate Discovery Subjects and related testimony.

---

[3] Harptree Ventures Limited owns a 50% stake in Skeely Holdings Limited, a corporation registered in Cyprus. Upon information and belief, Lutsenko is the ultimate beneficial owner of the corporate entity holding the remaining half of Skeely Holdings—Oldbay Estates Limited, a corporation registered in the Marshall Islands under the name Dmitri Andreev.

As set forth in more detail in the proposed subpoenas attached as Exhibits 2-5, Trotsenko seeks non-privileged documents and testimony concerning: (i) Lutsenko's performance of his obligations of the PMA, including his efforts to market and monetize the Project; (ii) Lutsenko's performance of his duties as a member of ZAO Federation Tower's board of directors; (iii) Lutsenko's communications with partners, suppliers, contractors, and service providers, concerning the Project; (iv) certain representations contained in the Anafasiev Affidavit, submitted on Lutsenko's behalf in the Cyprus Litigation; (v) the corporate structure and organization of the Corporate Discovery Subjects; and (vi) Lutsenko's ownership and control of certain assets located in Cyprus, which will be the focus of Trotsenko's affirmative application for injunctive relief. These factual issues are all directly relevant to Trotsenko's claims that Lutsenko breached his obligations under the PMA through his poor performance of the PMA since its execution and, ultimately, by abandoning the Project once he relocated to Florida, and the related Cyprus litigation.[4]

## ARGUMENT

As demonstrated below, Trotsenko has satisfied all of Section 1782's statutory requirements, and the discretionary factors strongly favor granting the limited discovery requested here. Section 1782 allows a "broad range of discovery" so as to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful." Intel, 542 U.S. at 259, 262. Congress enacted Section 1782 "to provide equitable and efficacious discovery for use in foreign and international proceedings" and to make discovery "of evidence for use in foreign litigation simple and fair." In re Edelman, 295 F.3d 171, 173 (2d Cir. 2002); see also, In re

---

[4]    While Trotsenko seeks documents concerning Lutsenko's performance under the PMA throughout the length of the contract, he does so because, on information and belief, Lustenko would have utilized documents about his performance prior to fleeing to Miami while residing in Miami and those documents are accordingly within this District.

Pimenta, 942 F.Supp.2d 1282, 1286 (S.D.Fla. 2013).  Since it was first enacted in 1855, Congress has on several occasions revised the statute—each time expanding the scope of discovery permitted by Section 1782.  See Intel, 542 U.S. at 247-48; Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1268 (11th Cir. 2014) (commenting that the evolution of Section 1782 demonstrates a Congressional desire "to broaden the scope of assistance" and to allow district courts to more readily grant discovery);  Brandi-Dohrn v. IKB Deutsche Indstriebank AG, 673 F.3d 76, 80 (2d Cir. 2012) ([T]he statute has, over the years, been given increasingly broad applicability.").

To obtain discovery under Section 1782, a party to a foreign proceeding need only demonstrate: (1) that the request is made by a foreign tribunal or an interested person (2) seeking evidence (3) for use in a foreign proceeding and (4) that the person from whom discovery is sought is located in the district of the court receiving the application.  See Intel Corp., 542 U.S. at 264;  In re Clerici, 481 F.3d 1324, 1331-32 (11th Cir. 2007).

Once Trotsenko establishes that the statutory requirements for Section 1782 relief are satisfied, this Court has discretion to grant the application based on certain equitable considerations, including:  (i) whether the discovery sought is within the jurisdiction of the foreign proceeding, (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (iii) whether the Section 1782 request "conceals an attempt to circumvent foreign proof gathering restrictions," and (iv) whether the request is otherwise "unduly intrusive or burdensome."  See Intel, 542 U.S. at 264-65.

Further, district courts must exercise their discretion under Section 1782 in light of the twin aims of the statute:  "providing efficient means of assistance to participants in

12

international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Intel, 542 U.S. at 252. Thus, Section 1782 has been broadly interpreted to permit U.S. courts to grant "wide assistance" to foreign litigants. See In re Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992); John Deere Ltd. v. Sperry Corp., 754 F.2d 132, 135 (3d Cir. 1985) (Section 1782's "liberal intent to provide judicial assistance" has been "acknowledged" as Section 1782's "primary statutory goal").

A.      **Trotsenko Has Satisfied All Statutory Requirements For Discovery.**

Trotsenko's Application clearly satisfies the four statutory requirements outlined by the Supreme Court in Intel:  Trotsenko is an "interested person" in both the LCIA Arbitration and the Cyprus Litigation, which are foreign proceedings, and through this Application seeks evidence from discovery subjects residing within this District. Intel, 542 U.S. at 264.

1.      Trotsenko is an "Interested Person."

First, as Trotsenko is a defendant and counterclaimant in both the LCIA Arbitration and the Cyprus Litigation, there is "no doubt" that he qualifies as an "interested person" within the meaning of Section 1782. See Intel, 542 U.S. at 257 (there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person.'").

2.      The Application Seeks Documentary and Testimonial Evidence.

Second, evidence as defined in Section 1782 includes a "testimony or statement" of a person or the production of "a document or other thing." In re Clerici, 481 F.3d at 1331-32 (citing 28 U.S.C. § 1782).   Accordingly, Trotsenko's request for documents and deposition testimony constitutes "evidence" within the meaning of Section 1782. Id.

3.     The Evidence Is For Use in a Foreign Proceeding.

Likewise, Trotsenko easily meets the requirement that the evidence sought through a Section 1782 application be for use in a foreign proceeding, as both the Cyprus Litigation and the LCIA Arbitration satisfy the test for a "Foreign Proceeding."

As a threshold matter, there is no doubt that the Cyprus Litigation—a proceeding in the courts of the Republic of Cyprus—is the quintessential "foreign proceeding" within the meaning of Section 1782.  See, e.g., Consorcio Ecuatoriano, 747 F.3d at 1270 (proceedings in the courts of a foreign country constitute "foreign proceeding");   Weber v. Finker, 554 F.3d 1379, 1385 (11th Cir. 2009) (Cypriot civil litigation constitutes a "foreign proceeding").

Likewise, private arbitrations, such as the LCIA Arbitration, fall within the scope of Section 1782.  See, e.g., In re Pinchuk, No. 13-22857, 2013 WL 5574342, at *2 (S.D.Fla. Sept. 20, 2013) (an LCIA proceeding is a foreign proceeding); Ex rel Application of Willing (HK) Shipping Co. Ltd., No. 09-22659, 2010 WL 1796579, at *9 (S.D.Fla. April 30, 2010) (a London Arbitrators Maritime Association ("LMAA") proceeding was a foreign proceeding); In re Application of Mesa Power Group, LLC, 878 F.Supp.2d 1296, 1302 (S.D.Fla. 2012) (a NAFTA arbitration qualifies as a foreign proceeding); see also Application of Consorcio Ecuatoriano de Telecomunicaciones S.A., 747 F.3d at 1270 n. 4 (defining "foreign proceeding" as including "arbitration.").   These precedents are consistent with a number of other courts around the country that have held that private international arbitrations satisfy the test for a "foreign proceeding."  See, e.g., In re Ex Parte Application of Kleimar, 220 F.Supp.3d 517, 521 (S.D.N.Y. 2016) (a LMAA proceeding is a "foreign proceeding");  In re Owl Shipping, LLC, No. 14-5655, 2014 WL 5320192, at *2 (D.N.J. Oct. 17, 2014);  In re Hallmark Capital Corp., 534 F.Supp.2d 951, 954 (D. Minn. 2007) (an Israeli arbitration qualified as a foreign

14

proceeding).[5]   The LCIA Arbitration therefore qualifies as a "foreign proceeding" within the meaning of Section 1782.  See Pinchuk, 2013 WL 5574342, at *2.

Nor is there any dispute that the evidence sought by this Application is for "use in" a foreign proceeding.  To satisfy the "for use" prong, the evidence need only be relevant to the foreign proceeding.  See Weber, 554 F.3d at 1384-85 (1782 discovery requests need only comply with the Fed. R. Civ. P. 45 standard for relevancy).  The evidence need not actually, or even probably, be discoverable or admissible in the foreign proceeding.  See Brandi-Dohrn, 673 F.3d at 80-81.  Here, there is no dispute that evidence concerning Lutsenko's performance under the PMA is relevant to both the LCIA Arbitration and the Cyprus Litigation nor that evidence related to Lutsenko's Cyprus assets is relevant to Trotsenko's soon-to-be-filed application for injunctive relief.  See Rawding Decl. ¶ 18; Pikis Decl. ¶ 15.

4.     The Discovery Subjects Are Located in the Southern District of Florida.

Each of the Discovery Subjects can be found in this district. Lutsenko currently resides at: 6001 Laguna Path S, Miami Beach, Florida.  Similarly, each of the Corporate Discovery Subjects is incorporated in Florida, with its principal place of business at 6001 Laguna Path S, Miami Beach, Florida.

**B.     The Intel Discretionary Factors Strongly Favor Granting Discovery.**

Pursuant to the discretionary factors outlined by the Supreme Court in Intel, the Court should grant the 1782 application.  In ruling on 1782 applications, courts can consider four discretionary factors outlined in Intel: (1) whether the person from whom discovery is sought is within the jurisdiction of the tribunal administering the foreign proceeding; (2) receptivity of the

---

[5]     The Fifth Circuit remains the lone circuit court to find, post-Intel, that an international arbitral tribunal does not meet the requirements of Section 1782.  See El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa, 341 Fed.Appx. 31, 33-34 (5th Cir. 2009).

foreign court to U.S. assistance; (3) whether the request attempts to circumvent foreign evidence-gathering mechanisms; and (4) whether the request is unduly burdensome.  See Intel, 542 U.S. at 264-65.

1.      Neither Foreign Tribunal May Compel Discovery of Evidence in the
United States.

According to the first discretionary factor set out in Intel, the Court may determine whether the discovery sought through a 1782 application is available from a foreign tribunal without the assistance of Section 1782.  See Clerici, 481 F.3d at 1334-35; In re Ex Parte Application of Porsche Automobil SE, No. 15-0417, 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ("the relevant inquiry is whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application").

As a threshold matter, the Corporate Discovery Targets are not parties to either Foreign Proceeding; thus, they are beyond the reach of the LCIA and the Cyprus Court.

Lutsenko—who resides in Miami—is similarly beyond the reach of either tribunal, providing further support for granting Section 1782 discovery.  In re Clerici, 481 F.3d at 1334-35 (a respondent and party to a proceeding pending in Panama who had left Panama was no longer within the jurisdiction of a Panamanian court, warranting Section 1782 relief); see also In re Application of Compania Anonima De Seguros La Occidental, No. 15-0012, 2015 WL 12862922, at *4 (N.D.Ga. May 13, 2015) (respondent and party to a Venezuelan proceeding had fled Venezuela and was properly the subject of a 28 U.S.C. §1782 request); In re Letter of Request from Dist. Court Stara Lubovna, No. 09-0020, 2009 WL 3711924, at *2 (M.D.Fla. Nov. 5, 2009) (granting 1782 discovery when party to the foreign proceeding was located outside the jurisdiction of the foreign proceeding).  Here, Lutsenko is outside the jurisdiction of the Cyprus

16

Court, which is therefore unable to compel Lutsenko to provide testimony.  See Pikis Decl. ¶ 6.

Similarly, the LCIA lacks the power to compel Lutsenko to testify or produce documents.  See

Rawding Decl. ¶ 21.  This alone would be sufficient to support granting 1782 discovery.  See

Clerici, 481 F.3d at 1334-35.

However, three additional factors support granting Section 1782 discovery in this

case.  First, the Discovery Subjects and the documents targeted by this Application are located in

the United States, making it more efficient to obtain that evidence through the compulsion power

of a U.S. court.  See In re Application of Proctor & Gamble Co., 334 F.Supp.2d 1112, 1114

(E.D.Wis. 2004) (granting 1782 application to subpoena a party to a foreign proceeding because

the evidence was located in the U.S. and could be more efficiently obtained through a U.S.

court); In re Sociedad Militar Seguro de Vida, No. 13-0036, 985 F.Supp.2d 1375, 1380 (N.D.Ga.

2013) (granting 1782 application against both parties and non-parties to a foreign proceeding to

promote efficiency).

Second, Lutsenko's status as a wanted fugitive further supports this Court

exercising its discretion to grant discovery.  The Russian government continues to seek

Lutsenko's arrest, see Pikis Decl. Ex. D (Search Results of the Interpol Red Notice Database),

making international travel for Lutsenko perilous.  See Pikis Decl. ¶ 6 (likelihood that if

Lutsenko travelled to Cyprus, he would be arrested and extradited).  It is entirely possible that

Lutsenko will elect not to travel to either London or Cyprus to face in-person cross examination

in either the LCIA Arbitration or the Cyprus Litigation.  Thus, a deposition conducted pursuant

to Section 1782 may well be the only chance Trotsenko will have to question Lutsenko under

oath.  Indeed, Lutsenko's conduct in the Cyprus Litigation proves the point:  Lutsenko elected

not to provide testimony in the Cyprus Litigation, instead choosing to submit an affidavit of his lawyer. See Pkis Decl. Ex. C (Affanasiev Aff.); see also In re Clerici, 481 F.3d at 1334-35.

Finally, the Court should grant the 1782 application because the foreign tribunals' procedural rules are unlikely to provide for the discovery of evidence in the United States. See Rawding Decl. ¶¶ 20-21; Pikis Decl. ¶ 18. Faced with similar circumstances, courts around the United States have routinely granted Section 1782 discovery. See, e.g., In re Application of Carsten Rehder Und Reederei Gmbh & Co, No. 08-0108, 2008 WL 4642378, at *2 (Oct. 17, 2008) (granting an application to subpoena a party to a foreign proceeding because differences in Chinese procedural law would not assure disclosure in the Chinese proceeding); AVIC International HK Trading Limited et al v. Reunited LLC et al, No. 13-00288 (S.D.N.Y. Nov. 22, 2013) (granting a 1782 application after the applicant argued that respondents were unlikely to produce evidence located in the U.S. for a China-based arbitration); In re Servicio Pan Americano de Proteccion, 354 F.Supp.2d 269, 274 (S.D.N.Y. 2004) (granting a 1782 application even though respondent was a party to the proceeding because of the limitations of Venezuelan discovery rules).[6]

The first discretionary factor thus supports this Court's exercise of discretion to grant Section 1782 discovery.

---

[6]     See also Heraeus Kulzer, GmbH v. Biomet, Inc., 633 F.3d 591, 594 (7th Cir. 2011) (Congress' intention in allowing broader discovery than in foreign proceedings was to "[set] an example to encourage foreign countries to enlarge discovery rights in their own legal systems."); In re Application of Auto-Guadeloupe Investissement S.A., No. 12-0221, 2012 WL 4841945, at *5 (S.D.N.Y. Oct. 10, 2012) (discovery warranted against party to a proceeding when French procedural law would not have provided for the same scope of discovery); Consorcio Minero S.A., v. Doe Run Resources Corporation, No. 11-0583, 2011 WL 4550200, at *3 (E.D.Mo. Sept. 30, 2011) (Peruvian court's lack of compulsion power weighed in favor of granting application).

2.    <u>Neither the LCIA Nor the Cypriot Court Is Hostile to this Application.</u>

In evaluating this factor, Courts should find in favor of discovery absent a "clear directive"—meaning "authoritative proof"—from the foreign country's judicial, executive, or legislative declarations that specifically rejects the use of evidence gathered under foreign proceedings. <u>Euromepa S.A. v. R. Esmerian, Inc.</u>, 51 F.3d 1095, 1100 (2d Cir. 1995). Here, not only is there no such clear evidence, but, to the contrary, there is every reason to believe that both an LCIA tribunal and the Cyprus Court would appreciate and benefit from this Court's assistance. <u>See</u> Rawding Decl. ¶¶ 18, 22; Pikis Decl. ¶¶ 18-19. There is no law, rule of evidence, or rule of procedure in either the LCIA or the Cypriot proceedings that prohibits Trotsenko from filing this Application or from seeking and obtaining the discovery requested here.[7] <u>See</u> Rawding Decl. ¶ 19; Pikis Decl. ¶ 18. Indeed, the Eleventh Circuit, as well as district courts in this Circuit, have granted Section 1782 requests for assistance both in the context of LCIA arbitrations and Cypriot litigations. <u>See</u> <u>Weber v. Finker</u>, 554 F.3d at 1382 (compelling production to assist in Swiss and Cypriot proceedings); <u>In re Pinchuk</u>, No. 13-0306, 2013 WL 5574342, at *2 (granting Section 1782 request in aid of an LCIA arbitration); <u>see also</u> <u>Gorsoan Limited v. Bullock</u>, 652 Fed.Appx. 7, 9 (2d Cir. 2016) (granting request for deposition testimony to assist Cyprus proceeding).

3.    <u>The Application Has Not Been Filed to Circumvent Any Law or Rule.</u>

The Application is brought in good faith and does not seek to circumvent English or Cypriot restrictions with respect to foreign proof gathering or other polices. <u>See</u> Rawding Decl. ¶ 19; Pikis Decl. ¶ 18. To the contrary, English law, which governs the parties' dispute, in

---

[7]    In fact, the LCIA Rules anticipate that parties will seek assistance from another state court or legal authority for interim measures prior to the constitution of an arbitral tribunal, the posture in which the LCIA Arbitration currently stands. <u>See</u> Rawding Decl. ¶ 19.

no way prohibits the parties from seeking the assistance of the U.S. courts in collecting evidence. <u>See</u> Rawding Decl. ¶¶ 19, 21. Cyprus law, likewise, permits parties to seek the assistance of a U.S. court in collecting evidence. <u>See</u> Pikis Decl. ¶ 18. Moreover, the proceedings both before the LCIA and the Cypriot court remain at the earliest stages, and neither tribunal has issued any orders with respect to documents or testimony. <u>See</u> Rawding Decl. ¶ 19; Pikis Decl. ¶ 13. This factor supports granting the requested discovery.

Discovery should also be granted because the Application presents the only practical way for Trotsenko to obtain highly relevant evidence that goes to the heart of the parties' dispute. Residing in Miami, Lutsenko is beyond the jurisdiction of the Cyprus Court, and the as yet unconstituted LCIA tribunal will not be able to compel Lutsenko to turn over evidence or provide sworn testimony. <u>See</u> Rawding Decl. ¶ 21; Pikis Decl. ¶ 6. Thus, absent relief under Section 1782, Trotsenko will be deprived of key evidence for use in the Foreign Proceedings.

4.    <u>The Discovery Requests Are Not Unduly Intrusive or Burdensome.</u>

The requested discovery is modest. Trotsenko seeks only documents and deposition testimony related to Lutsenko's performance of his duties under the PMA and documents related to certain Cypriot assets of which, upon information and belief, Lutsenko is the ultimate beneficial owner. This discovery is focused, highly relevant, and necessary for a fair and just resolution of the underlying matter. This factor too supports the grant of Trotsenko's Application.

**C.    This Court May and Should Order Lutsenko to Preserve Evidence Pending Compliance with an Order Pursuant to Section 1782.**

The immediate need to secure evidence against possible destruction by Lutsenko, a current fugitive wanted in Russia, warrants an order requiring the Discovery Subjects to

preserve all evidence sought under the subpoena.  The duty to preserve evidence of potential relevance to pending or impending litigation is inherent. See Long v. Celebrity Cruises, Inc., No. 12-22807, 2013 WL 12092088, at *5 (S.D.Fla. July 31, 2013) ("Federal law recognizes a litigant's duty to preserve evidence once it knows…that such evidence may be relevant to any potential litigation."). Accordingly, courts entertaining Section 1782 applications routinely order preservation of evidence. See In re Setraco Nigeria Ltd., No. 13-0016, 2013 WL 1704913, at *4 (M.D.Fla. 2013) (granting a Section 1782 application and ordering preservation of evidence); In re Pinchuk, No. 13-00251, 2014 WL 348110, at *4 (D. Wyo. Jan. 31, 2014) (same); In re Application of Nat'l Broad. Co., Inc., No. M-77, 1997 WL 33442116, at *1 (S.D.N.Y. Aug. 1, 1997) (same).

Lutsenko's status as a fugitive from a Russian criminal proceeding raises the suspicion he would similarly disrespect the law of the United States to destroy evidence before Trotsenko is able to access the documents necessary to establishing his claims and defenses in the Foreign Proceedings. Therefore, this Court should order Lutsenko to take immediate steps to preserve and protect the evidence requested in this Application.

## CONCLUSION

For the reasons set forth above, the Applicant respectfully requests that this Court (i) grant this Application for Discovery Pursuant to 28 U.S.C. § 1782 with respect to the documents requested herein and in Exhibits 2-5 hereto, and order the Discovery Subjects to produce said documents within thirty (30) days; (ii) permit the deposition requested herein within the parameters set forth above and below in Exhibit 5; (iii) direct each of the Discovery Subjects to duly preserve all evidence related to the subject matter of this Application; and (iv) grant such other and further relief as the Court deems just and proper.

Miami, Florida
Dated: September 27, 2017           */s/ Adriana Riviere-Badell*

Adriana Riviere-Badell (Florida Bar No. 30572)
adriana.riviere-badell@kobrekim.com
Gabriela M. Ruiz (Florida Bar No. 46844)
gabriela.ruiz@kobrekim.com
KOBRE & KIM LLP
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
T: +1 305 967 6100
F: +1 305 967 6120

Timothy P. Harkness
timothy.harkness@freshfields.com
David Y. Livshiz
david.livshiz@freshfields.com
Allison C. Wilson
allie.wilson@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
T: +1 212 277 4000
F: +1 212 277 4001

*Pro Hac Vice* Applications Pending
Attorneys for the Applicant