Sealed

# Exhibit 7

C1

**DATED:  December 6, 2013**

**MRC SKYSCRAPERS MANAGEMENT B.V.,
ROMAN VIKTOROVICH TROTSENKO**

**AND**

**DMITRY VALERIEVICH LUTSENKO**

**PROJECT MANAGEMENT AGREEMENT**

C1

# PROJECT MANAGEMENT AGREEMENT

THIS PROJECT MANAGEMENT AGREEMENT (hereinafter referred to as the "**Agreement**") is entered into on December 6, 2013

**BY AND BETWEEN:**

(1) **MRC Skyscrapers Management B.V.**, a company incorporated under the laws of the Netherlands under registration number 27269773 at the address: Prins Bernhardplein 200, 1097 JB, Amsterdam, the Netherlands, represented by the Director Intertrust (Netherlands) B.V. acting by virtue of the Articles of Association and **ROMAN VIKTOROVICH TROTSENKO**, a citizen of the RF (passport series 45 10 No. 482334, issued by the Otradnoye District Department of the OUFMS of Russia for Moscow, place of residence: Apt. 161, 18 "V" Altufievskoye Shosse, Moscow (together hereinafter referred to as the "**Shareholder**"), the party of the first part, and

(2) **DMITRY VALERIEVICH LUTSENKO**, a citizen of the Russian Federation, passport No.4002 180226, residing at:  Apartment 8, 1 Naberzhnaya reki Fontanki, Saint-Petersburg, Russian Federation (hereinafter referred to as the "**Project Manager**"), the party of the second part,

Jointly referred to as the "**Parties**" and individually as the "**Party**",

**WHERAS**,

- The Shareholder and (or) any person that has joined this Agreement, considering the provisions hereof and by virtue of the Deed of Accession (see the definition herein below) the form of which is attached hereto as Exhibit 1, are (is) or shall

2

000002

be (an) officially registered and beneficial shareholders (shareholder) of the Entity.

- The Project Manager intends to perform the management of the Project (see the definition herein below). Prior to entering hereinto, the Project Manager has conducted a construction audit related to the activities on the Project and has no claims to the Shareholder which could affect appropriate Project Management if such claims were not specified in the auditors' report and submitted to the Shareholder as of the date of entering hereinto.

- The Shareholder has agreed to appoint the Project Manager as Project Manager and Chairman of the Board of Directors, and pay him a Fee for the Project Management (see the definition herein below), compensate the expenses recognized hereunder as Actual Project Manager's Costs, and the Project Manager has agreed to accept such assignment on the terms set out herein and perform an effective Project Management for the purpose of the Project realization.

- The Shareholder herewith guaranties that the Agreement has been signed within the limits and without violations of any other effective agreements in respect of the Entity and (or) Shareholder.

## THE PARTIES HAVE AGREED AS FOLLOWS:

## 1.   INTERPRETATION

1.1   In the text hereof, the following words and expressions shall have the meanings assigned to them:

3

000003

C1

**'Deed of Accession to the Agreement'** means an deed of accession drawn up and signed by the Parties and another person who has acceded hereto considering the provisions hereof, in the form attached hereto as Exhibit 1.

**'Arbitral Tribunal'** has the meaning defined in Clause 10.

**'Affiliated Person'** means (i) a person who is directly or indirectly Controlled by or is under common Control with the subject person; (ii) a person who owns or controls over 50% (Fifty percent) of issued voting securities or a participation share of another person; or (c) an executive officer, director or a person acting in concert with the subject person.

**'Bank Funding'** means financing provided to the Entity and (or) Shareholder by a Russian and (or) foreign bank, financial or investment company, or another person in the scope required for the Project realization.

**'Project Beneficiary'** means OOO "AEON Corporation Russia", established under the laws of the Russian Federation (OGRN 1027716007890), whose ultimate beneficiary as of the date hereof is Mr. Roman Viktorovich Trotsenko, a citizen of the Russian Federation (passport series 45 10 No.482334, issued by the Otradnoye District Department of the OUFMS of Russia for Moscow, place of residence: Apt. 161, 18 "V" Altufievskoye Shosse, Moscow).

**'Financial Model'** means the last version of the Entity's financial budget valid from the effective date hereof, prepared by the Shareholder and approved by the Shareholder and Project Manager in a manner stipulated hereby. The Financial Model reflects the Revenues and Expenditures Budget, Sales Budget, Construction Expenditures Budget, Cash Flow Budget (CFB) and the Project Realization Schedule whose valid and approved by the Parties versions are attached as Exhibit 3 hereto.

**'Project Currency'** means US dollars (the lawful currency of the United States of America).

4

000004

'**Project Management Fee' or 'Fee'** means a fee to be paid to the Project Manager in the amount, in the manner and on the terms stipulated in Clause 3 hereof.

'**Project Proceeds'** means the total accumulated amount of money (including and not limited to earnings from the Entity's main activities, earnings from investment activities expressed in the form of a financial result and earnings from other property expressed in monetary terms) related to the project (prior to deduction of applicable Taxes) and calculated using the accrual method of accounting, determined based on the Management Accounting, taking into consideration the Entity's receivables existing as of the date hereof.

'**Town Planning Code'** means the Town Planning Code of the Russian Federation No.190-FZ of December 29, 2004 (with amendments).

'**Project Commissioning'** means issuing a permit for commissioning of the final stage (final start-up complex) of the Project (i.e. commissioning of the entire Project) by the relevant Russian authorities in compliance with article 55 of the Town Building Code and the norms of the current laws of the RF.

'**Date of the Project Realization Event'** means the date on which any Project Realization Event occurred, and in case of occurrence of several Project Realization Events – the date of the earliest of them.

'**Control'** means direct or indirect possession of the right to manage or determine the management direction of a company, corporation, partnership or another person, also by virtue of the right of ownership of voting shares, under a trust agreement or on any other grounds; the term '**Controlled'** shall be interpreted in a corresponding manner.

'**Confidential Information'** means (a) any information of a confidential nature regarding the activities, financial statements, finances, agreements or intellectual property (which may be owned or provided under a license)  or other deals, transactions, operations or property of any Party or their Affiliated Persons; (b) any information in respect of which a Party or its Affiliated Persons have assumed the

000005

obligation to maintain confidentiality; and (c) any information with regard hereto, the terms hereof and the Project Management.

'**Taxes**' means any and all forms of taxes, duties, rates, charges or other dues charged at any time and by any agencies in the Russian Federation, Cyprus, the Netherlands or any other country as well as any interest, penalties, fines or surcharges in connection with such taxes, and any reference to taxes shall include the amounts which represent the taxes, are equivalent to the taxes or must be considered as taxes.

'**Entity**' means Closed Joint Stock Company "Federation Tower" established and conducting its activities under the laws of the Russian Federation, registered under number 1027716007890 (OGRN) at the address: Federation Business Center, 12 Presnenskaya Naberezhnaya, Moscow, 123100, Russia, and its legal successors.

'**Premises**' means the Federation multi-use office and recreation complex, consisting of two towers – "A" and "B" ("West" and "East") and the podium part uniting them, that is under construction at the address: Federation Business Center, 12 Presnenskaya Naberezhnaya, Moscow, Russia.

'**Project**' means a range of activities and/or actions performed during the validity period hereof and aimed at the construction of the Premises based on the Permits obtained for the construction of the Premises (start-up complexes), including designing, construction, final commissioning of the entire Premises and sale of non-residential quarters of the Premises and other assets of the Entity and/or the Project.

'**Business Day**' means any day (other than a Saturday and Sunday) on which banks are open for business in Moscow, Russian Federation; Nicosia, Republic of Cyprus and Amsterdam, the Netherlands.

'**Permit for the Premises Construction**' means a permit for the construction of a separate start-up complex (construction stage) issued by the relevant government agency of the Russian Federation pursuant to article 51 (Issue of a construction permit) of the Town Planning Code confirming, among other things, that the design documents

000006

meet the established requirements and approving the realization of the respective construction stage (start-up complex) of the Premises.

'**Settlement Date**' means the date on which monthly settlement of Actual Project Costs takes place and which falls on the first (01) day of the month following the billing month.

'**Market Evaluation**' means a market-based evaluation of any quarters of the Project performed based on the market value of one square meter, which depends among other things on the type and characteristics of the quarters, determined by the Parties or – in the event of absence of a decision jointly adopted by the Parties – pursuant to the provisions of Clause 3 hereof, conducted within Thirty (30) calendar days of the occurrence of the Project Realization Event.

'**Project Realization Event**' means occurrence of one of the following events:

a) Commissioning of the Premises and realization (alienation) of all capital assets of the Premises constructed under the Project; or

b) Project Beneficiary change; or

c) sale and (or) other alienation of 50 (Fifty) or more percent of the Entity's shares to third parties, save for cases of disposal (sale) of the Entity's shares to the Affiliated Persons of the Project Beneficiary; or

d) any distribution, i.a. in kind, of the quarters in the Premises on liquidating the Entity, reducing its capital or otherwise.

'**Construction**' or '**Construction Works**' means all the works and organizational and technical activities that the Project requires oriented towards designing, constructing, placing and finally commissioning the whole Premises, including equipping the Premises with all necessary systems that ensure their sound functioning and balancing and commissioning such systems, in full compliance with the agreed and approved in the established manner design and construction documents.

7

000007

C1

**'Project Management'** means any requisite and sufficient activities of the Project Manager and (or) third parties he has engaged within the scope of legal and actual authorities resting with the Project Manager and of the information provided by the Shareholder and (or) the Entity for managing the Project, including making managerial decisions in respect of the following issues:

a) checking managerial accounting system (accounting statements) for the Entity and the Project, respectively;

b) organizing and (or) carrying out Construction;

c) organizing the obtainment by the Entity of Premises Construction Permits and permits to commission the Premises;

d) organizing under Project Management the execution of other necessary works, services, as well as performing within his terms of reference other actions specified or directly derived from the Project Manager's obligations under this Agreement (except for the actions to be jointly performed by the Parties or the performance of which has been left with the Entity or has been made the Shareholder's responsibility);

e) issuing proposals to the Shareholder as to the price and procedure for selling the Premises;

f) attracting and servicing the Bank Funding for the Project in conjunction with the Shareholder;

g) establishing the procedure for and organizing the sale of quarters in the Premises in accordance with the agreed process scheme for conducting sales.

**'Management Accounting'** means a well-ordered system of identifying, measuring, collecting, registering, interpreting, summarizing, compiling, controlling, reflecting the current economic events by the Entity and for the Project, providing the Entity's management with data and metrics necessary to take decisions on the Entity's business operations and Project realization, calculated in the Project Currency on the accrual

8

000008

basis and made quarterly by the Entity pursuant to the Accounting Policy, financial accounting rules and based on the data from the Entity's and/or Shareholder's system of financial accounts as presented by the Entity and(or) by the Shareholder to the Project Manager for approval.

'**Entity's Articles of Association**' means the wording of the Entity's Articles of association as effective on the date of signature hereof, displayed in Exhibit 2 hereto, as well as any other subsequently restated Entity's Articles of Association as agreed to by the Project Manager and approved by the relevant Entity's body.

'**Actual Project Costs**' means the aggregate actual amount of expenses for implementing the Project (inclusive of the amount of interest on the funds borrowed to implement the Project) and (or) any other expenses associated with the Project as incurred by the Entity and/or Shareholder from January 1, 2013 to the date when a Project Realization Event occurs, quarterly determined on the basis of the Management Accounting, inclusive of Taxes and the Entity's payables as agreed between the Parties in the Financial Model.

'**Actual Project Manager's Costs**' means the Project Manager's expenses, actually borne and documented, caused to him due to his discharging the responsibilities hereunder and implementing the Project, made either within the agreed Financial Model or agreed to by the Project Beneficiary or Shareholder.

For the avoidance of doubts, the Parties have determined that the said Actual Project Manager's Costs shall be included into the Actual Project Costs along with expenses borne by the Entity and/or the Shareholder, shall be accounted for among the Actual Project Costs and taken into consideration in calculating financial results for the Project.

1.2   In this Agreement:

1.2.1 The use of singular shall be deemed to include the plural, the use of any gender shall be deemed to include every other gender, a reference to a person shall be

000009



deemed to include a legal entity, a company, and any other association or organization, and (in each case) vice versa.

1.2.2 Headings are for convenience of reading only and shall not affect the interpretation and construction hereof.

1.2.3 Reference to a Clause or an Exhibit (unless the context otherwise requires) shall be interpreted as a reference to a Clause hereof or an Exhibit hereto.

1.2.4 A reference herein to any English legal term for any action, remedy, means of protecting interests, method or form of judicial proceeding, legal document, court or any legal concept or thing shall, in respect of any jurisdiction other than England, be deemed to include a reference to a corresponding or most similar legal term in any jurisdiction other than England to the extent that such jurisdiction is relevant to the transactions contemplated by this Agreement or the terms hereof.

1.2.5 A reference in this Agreement to "redistributed floor areas" shall mean a reference to floor areas which were, before and/or after the signing date hereof, additionally included into the subject matter of investment and/or other agreements with purchasers (investors) entered into before the signing date hereof, or in respect of which new investment and/or other agreements with purchasers (investors) were made and payment obligations under which are discharged by offsetting claims under other obligations between the Entity and such purchasers (investors) existing as of the signing date hereof or by performing other actions that have the economic result of a setoff, if their signing does not otherwise result in the purchasers' (investors') obligation to make an actual payment of the cost of such floor areas to the Entity.

1.2.6 A reference to a document in an "agreed form" shall be interpreted as a reference to a document in a form which is approved and is intended for identification purposes and which is signed by the Parties or on their behalf.

000010

1.2.7 Exhibits shall constitute a part hereof and shall have the same force and effect as if they were included in the text of the Agreement itself. References to this Agreement shall also mean references to its Exhibits.

1.2.8 A Party's obligation not to do any acts or things shall deem to include an obligation not to permit them to be done, nor to let them be done, nor to assist in them being done.

1.2.9 Any amount that any Party is obliged to pay in compliance with the provisions hereof and any amount to be taken into consideration for the purposes hereof, if such amount is expressed in Russian rubles, shall be converted into US dollars at the official exchange rate of the Central Bank of Russia quoted on the date of the relevant payment or settlement.

## 2.   SUBJECT OF THE AGREEMENT

2.1.   The subject of the Agreement is provision of Project Management services by the Project Manager to the Shareholder by performing all required legal (including preparation for signing agreements) and other (actual) activities aimed at the Project realization, and the Shareholder shall pay the Project Manager a fee for the management.

2.2.   The Shareholder shall appoint the Project Manager and shall ensure the Project Manager's appointment as Project Manager as well as his appointment as Chairman of the Board of Directors of the Entity within the shortest possible time of signing hereof.

## 3.   MANAGEMENT FEE AND PAYMENTS

3.1   In exchange for the performance by the Project Manager of his obligations hereunder, the Shareholder pays a Management Fee to the Project Manager and (or) the Project Manager's Affiliated Person named in writing in advance (and payment to such an affiliate shall be deemed proper fulfillment of the obligation for the Shareholder to pay remuneration hereunder) pursuant to the provisions of this Clause 3:

C1

the remuneration amounting to a sum of money calculated by the below formula subject to the provisions of this Clause 3 shall be paid within 40 (Forty) calendar days of the date when a Project Realization Event happens, anyway prior to the distribution of dividends by the Shareholder:

$$V = (P + ME - APC) \times 0.20,$$

where:

**V**  stands for the Project Management Fee,

**P**  stands for Project Proceeds accumulated by and on the date when a Project Realization Event occurs,

**ME**  stands for the aggregate Market Evaluation of the quarters in the Premises, unrealized on the date a Project Realization Event has occurred and redistributed in any way in favor of the Shareholder and (or) its Affiliated Persons, as held pursuant to the provisions of Clause 3 hereof,

**APC**  stands for Actual Project Costs accumulated by and on the date when a Project Realization Event occurs (inclusively).

Payments to the Technical Supervisor under the technical Supervision Agreement entered into by the Entity for managing the Project that are higher than the cost of the Technical Supervisor's works shall be deemed paid out (shall reduce the Project Manager's Fee).

In the event that:

a) the Fee calculated pursuant to the provisions of Clause 3 hereof has a negative value; or

b) the Fee calculated pursuant to the provisions of Clause 3 hereof totals 0 (Zero);

000012

the Shareholder shall not be liable to pay any Fee, compensate or indemnify the Project Manager, and the Project Manager shall not be liable to return any payment or reimbursement of expenses that he received from the Shareholder in accordance with the provisions hereof in the course of performing this Agreement. For avoiding doubts, the provisions of this Clause 3 shall exclude no rights of the Parties to claim reimbursement of expenses and utilize other legal remedies.

3.2. In the event that the Parties cannot come to an agreement on what the Market Evaluation of the relevant quarters in the Premises is worth within 5 (Five) days of the date a Project Realization Event has occurred, the calculations of the Fee pursuant to Clause 3 hereof shall rely on the Market Evaluation of the relevant quarters in the Premises as performed within 30 (Thirty) calendar days of the Project Realization Event date (subject to Clause 3) by one of the following assessors:

- Knight Frank (www.knightfrank.ru);

- Jones Lang LaSalle (www.joneslanglasalle.ru);

- Ernst & Young (www.ey.com);

- PwC (www.pwc.com),

jointly chosen by the Parties on the proposal of any of the Parties, and if there is no agreement between the Parties within 5 (Five) days—by the Jones Lang LaSalle company.

The obligation to contract and to pay the value of services of any of the above listed assessors and liability for paying such value shall be assumed by the Entity, and, for the avoidance of doubts, the cost of evaluation shall be part of the Actual Project Costs.

3.3. The Shareholder's obligations to pay the Fee pursuant to the provisions of this Clause 3 arising before or upon termination or rescission hereof shall continue in

13

000013

force after this Agreement has come to an end till such obligation to pay the Fee has been fulfilled.

3.4     The Fee shall be paid by the Shareholder to the Project Manager and (or) to the Project Manager's Affiliated Person named in writing in advance by remitting the funds with their crediting to the account (with the value date) on the same day, which account shall be made known to the Shareholder in writing by the Project Manager in good time before the payment date.

3.5     The Project Management Fee shall be calculated and paid in the Project Currency.

3.6     Should this Agreement be terminated or cancelled at any time within its term on the following grounds:

  3.6.1. the Project Manager has become incapable to manage his own affairs on account of his illness or decease; or

  3.6.2. a court, competent to review matters of mental health, has ordered to isolate the Project Manager; or

  3.6.3. the Project Manager has systematically (more than twice) caused a significant breach hereof and of his obligations contemplated by Clause 5 hereof and has persisted in not addressing such violations within 30 (Thirty) business days of receipt of a written notice from the Shareholder requiring their remediation; or

  3.6.4. the Project Manager cannot perform his obligations hereunder within more than 30 (Thirty) business days for any reason, including any actions by third parties or public authorities,

the Project Management Fee shall be calculated and paid in the manner established in sub-clause 3.7 of this Clause.

3.7     In case this Agreement is terminated or dissolved on the conditions stated above in sub-clause 3.6, the Shareholder shall be liable to make payment of the Fee

14

000014

C1

ə Fee ... calculated by the following formula and payable within 40 (Forty) calendar days of the Project Realization Event date:

$$VI = Vx(RCN/2+50\%),$$

where

**VI** stands for the Project Management Fee due in case of terminating or rescinding this Agreement on the terms of this sub-clause,

**V** is the Project Management Fee,

**RCN** stands for such a figure expressed in percent and calculated in view of the Project completion deadline that equals 0 (Zero) on August 1, 2013 and is subject to an increase of 2.5% (Two point Five percent) for each full calendar month starting from August 1, 2013, provided that the works progress according to the Project Realization Schedule (constituting an integral part of the Financial Model) and are closed by the relevant certificates of completion, whereas in case of non-performance or non-completion or early progress of works in contrast to the Project Realization Schedule, the RCN value shall pass as equal to a sum pertaining to the last month in which the respective works were undertaken and completed in accordance with the Project Realization Schedule (at the same time, for the avoidance of doubts, if the works are executed in accordance with the Project Realization Schedule, RCN must equal 100 on the date equal to the scheduled Project completion date of December 31, 2016).

3.8 In case this Agreement is terminated or dissolved at any time within its term while there is a material breach by the Shareholder of the obligations contemplated by Clause 4, sub-clause 4.2, hereof and provided that the Shareholder remains in such breach within 30 (Thirty) business days after receipt of a written notice from the Project Manager requiring its resolution, the Shareholder shall undertake to pay to the Project Manager a lump sum as the Project Manager's liquidated damages hereunder within 15 (Fifteen) business days of the date when the aforesaid time to

- 15 -

000015

C1

address a breach expires, calculated by the formula appearing below, less the Fee amounts already paid or payable to the Project Manager:

$$LD = Vx(RCN/2+50\%),$$

where:

**LD**    stands for the amount of liquidated damages due to the Project Manager,

**V**    stands for the Management Fee amount calculated by the formula stipulated in Clause 3, sub-clause 3.1. In this case, the calculations should rely on the data from the latest revision of the Financial Model as in effect before the date of terminating or rescinding this Agreement instead of the data from Management Accounting,

**RCN**   stands for such a figure expressed in percent and calculated in view of the Project completion deadline that equals 0 (Zero) on August 1, 2013 and is subject to an increase of 2.5% (Two point Five percent) for each full calendar month starting from August 1, 2013, provided that the works progress according to the Project Realization Schedule (constituting an integral part of the Financial Model) and are closed by the relevant certificates of completion, whereas in case of non-performance or non-completion or early progress of works in contrast to the Project Realization Schedule, the RCN value shall pass as equal to a sum pertaining to the last month in which the respective works were undertaken and completed in accordance with the Project Realization Schedule (at the same time, for the avoidance of doubts, if the works are executed in accordance with the Project Realization Schedule, RCN must equal 100 on the date equal to the scheduled Project completion date of December 31, 2016).

For the avoidance of doubts, payment of the liquidated damages by the Shareholder to the Project Manager pursuant to the provisions of this Clause 3, sub-clause 3.8, shall preclude the Project Manager or his Affiliated Persons from raising any other claims proceeding herefrom or connected herewith, including any claims for the Fee.

000016

## 4. SHAREHOLDER'S OBLIGATIONS

4.1  The Shareholder shall agree to assist the Project Manager as far as it is possible in the Project Manager's performance of his obligations hereunder within the term of this Agreement, in particular:

4.1.1 to participate in the Project realization and cooperate with the Project Manager in the manner and to the extent provided for herein;

4.1.2 to provide the Project Manager in the quickest time with the data (including without limitation financial accounting statements, as well as other documents), necessary for the purpose of the Project Manager's performing his obligations hereunder;

4.1.3 to invariably act responsibly and in good faith in its dealings with the Project Manager;

4.1.4 to desist from interfering with the Project Manager's activities within expenses for implementing the Project as agreed in the Financial Model;

4.1.5 to apply all reasonable efforts to assist and support the Project Manager in accordance with the grounded demands of the latter with a view to doing the Project Management;

4.1.6 to arrange that the Bank Funding is attracted pursuant to the approved Financial Model in conjunction with the Project Manager;

4.1.7 to ensure that the Entity is solely liable for the proper incurrence of all Project Costs, determined from the data of the Management Accounting, and pays the same, while the Project Manger bears no responsibility for their payment.

4.2  In order to promote the proper performance by the Project Manager of his obligations hereunder, the Shareholder shall undertake:

4.2.1 within 10 (Ten) business days of the date of sending a contract, agreement or (and) other document requiring approval according to the Entity's Articles of Association or this Agreement and (or) signature in the Entity's name (hereinafter referred to for the purposes of this Clause 4 as the 'Instrument') to the Entity's sole executive body for approval, to approve and/or cause such an Instrument to be approved and signed in the name of the Entity, provided that such an Instrument is in no conflict with the requirements of the current laws and has no

17

000017

express contradictions to the Project objectives or the Entity's or Shareholder's interests. In the event that the Entity's sole executive body has developed substantiated doubts about having the said contradictions, it shall be entitled to give notice to the Project Manager and the Shareholder within the same time stating the necessity to initiate negotiation procedures in order to resolve potential contradictions in the Instrument draft;

4.2.2 to provide for the delivery of the Management Accounting to the Project Manager within 60 (Sixty) calendar days of the end of each quarter in the relevant financial year supporting them with all necessary source documents;

4.2.3 to ensure approval by the Shareholder of the Financial Model (and any deviations therefrom) to which the Project Manager has beforehand agreed in writing within 30 (Thirty) calendar days of such agreement;

4.2.4 to indemnify for the Project Manager's Actual Costs borne by the Project Manager within the limits of the Financial Model within 45 (Forty-five) calendar days of the Project Manager's forwarding a documented confirmation of such costs if there are no objections to their reasonable nature;

4.2.5 in the shortest possible time upon the Project Manager's request, to provide for the appointment, election and extension of the timescales for the powers of the Project Manager as the Chairman of the Entity's Board of Directors;

4.2.6 to make no sale and (or) other disposal of 50 and more percent of the Entity's shares to third parties;

4.2.7 to take no decisions without agreement of the Project Manager on direct and (or) indirect realization by the Entity of the real property in its possession on the date of signature hereof;

4.2.8 to ensure the unchangeability of the Project Beneficiary within the term hereof;

4.2.9 to make no in-kind distribution or return to the Shareholder and/or the Shareholder's and/or Project Beneficiary's Affiliated Persons of the Entity's assets, including quarters in the Premises (i.a. on winding up, reducing the capital or otherwise);

4.2.10 to involve no other parties to the Project Management, apart from the Project Manager or the parties he agreed to in writing, as well as to engage in no sole performance, nor task other parties with the performance of any duties

18

performable by the Project Manager hereunder if the Project Manager is properly performing its obligations.

4.2.11 to enter in no agreements (including any shareholders' agreements and partnership agreements) that conflict with the provisions of this Agreement or pose difficulties for its fulfillment;

4.2.12 to make no decisions without agreement of the Project Manager on distribution of profits, payment of dividends prior to the very act of payment of the Fee to the Project Manager in the manner and on the terms of Clause 3 hereof;

4.2.13 to approve and ensure performance by the Entity of the obligations stipulated in Clause 3, sub-clause 3.2, hereof;

4.2.14 to obtain and maintain in force within the term of this Agreement an insurance policy (policies) with a first-class international insurance company in relation to the liability of both the Project Manager and the Entity's sole executive body providing an insurance coverage of no less than Ten Million US dollars and stating the Shareholder as the Beneficiary. To fulfill this sub-clause, the Project Manager shall undertake to provide the Shareholder with all the documents, necessary to perform the relevant duty. Expenses incurred in connection with acquiring the insurance coverage shall be accounted for as part of the Actual Project Costs for the purposes of Clause 3 hereof.

4.2.15 in case of sale or other direct or indirect way of disposal by the Shareholder of the Entity's shares in part or in full, to ensure the accession of the person in whose favor such share was disposed of, to this Agreement by signing the Deed of Accession to the Agreement in the form shown in Exhibit 1 hereto.

## 5.  PROJECT MANAGER'S OBLIGATIONS

5.1  Within the framework of the Project Management, the Project Manager shall ensure selection of required suppliers, contractors and providers of works and services, and signing contracts with them on conditions beneficial for the Project as well as overseeing the performance by the engaged suppliers, contractors and providers of works and services of their contractual obligations with due diligence and in a timely manner; perform proper management of the Project for a timely Project realization within the framework of the Financial Model having, among other things, ensured a timely obtainment of all permits and approvals necessary for the Project realization, including the Permit for the Premises Construction and permit for the Premises commissioning which is not an obligation of the suppliers,

- 19 -

000019

contractors and providers of works and services under the contracts signed with them; ensure performance of all other activities necessary for the Project realization.

5.2 The Project Manager, in the course of performing his obligations hereunder, shall provide to the Shareholder for approval a quarterly Project Progress Report which, apart from information about activities in the past period, shall also include an at least 1 (One) quarter look ahead plan of activities for the Project realization. For the purposes hereof a quarter shall be understood to mean three consecutive calendar months with the first quarter of the current year beginning from January 1 of each calendar year.

The Project Manager shall on a quarterly basis, not later than the 30th day of the month following the reporting quarter, provide to the Shareholder the Project Progress Report (hereinafter referred to as the Report) without considering the data contained in the Management Accounting.

The Shareholder, within 15 (Fifteen) calendar days of receiving the Report, shall:

a) either approve the Report generally;

б) or forward to the Project Manager 2 copies of a statement of disagreements on unaccepted items of the Report with a description of detected defects for each of the unaccepted items.

After receiving a statement of disagreements to the Report, the Project Manager has the right at his discretion to:

a) correct the defects specified in the statement of disagreements, fully update the earlier forwarded Report and forward it once again to the Shareholder for signing;

б) sign the statement of disagreements with an "Accepted in the Shareholder's wording" mark and forward one copy of the statement of disagreements to the Shareholder.

5.3 All decisions on selecting contractors for any types of works shall be made by the Project Manager jointly with the Shareholder.

All decisions on substantial terms of the Project financing, including the financing Bank and the terms of financing, shall be made by the Parties jointly.

Management of sales relating to the Project shall be within the Project Manager's competence on condition that the prices and sales volume shall be not less than

000020

those specified in the Financial Model. If sales for a lower price are required, the price reduction shall be agreed with the Shareholder.

5.4   Herewith, the Project Manager unconditionally and irrevocably assumes an obligation to the Shareholder to waive and ensure that the Affiliated Persons of the Project Manager, as any person having contractual relations with the Project Manager, acting on behalf and for the Project Manager waive any rights, remedies of defense or claims in respect of the Shareholder, the Entity or their Affiliated Persons, or any current or former employee, executive officer of the Entity or the Shareholder who may be the subject of proceedings in court, before an arbitral tribunal or any other body possessing the authority to make a judgment in a case, provided no other provisions of this sub-clause prevent any use of rights by the Project Manager in laying claims, if such rights or claims arise in connection with or as a result of intentional unfair actions (lack of action), or an intentional distortion/ concealment of facts by any of the above persons.

To avoid doubts, the provisions of this sub-clause do not contain conditions that (a) prevent the Project Manager's initiation of any court (including arbitration), arbitral or administrative proceedings in respect of the Shareholder and its Affiliated Persons or the Entity relating to the obligations resulting herefrom, and (b) do not exclude and not prevent in any way any rights of the Project Manager relating to any such court (including arbitration), arbitral or administrative proceedings and equally do not exclude and do not limit any responsibility of the Shareholder and/or any of its Affiliated Persons and/or the Entity hereunder. The Project Manager shall provide to the Shareholder, at its request, reimbursement and protection from any and all legal action, financial liabilities, direct and indirect losses, damage and expenses recovered by a court order, borne or threatening for the reason of the Project Manager's failure to meet the obligations stipulated in this sub-clause.

5.5.   The Project Manager shall, during the validity period hereof:

5.5.1. Ensure the performance of the entire scope of the Construction Works on the Project.

5.5.2. Carry out a full range of activities for the Project realization ensuring that all contracted providers of works and services meet the contract terms, and monitor the deadlines and cost.

000021

5.5.3. Provide the Shareholder with all necessary information and source documents relating to the performance of obligations hereunder upon first request and within a reasonable period of time.

5.5.4. Arrange the performance of the entire scope of works hereunder aimed at the Project realization, based on the metrics and characteristics formulated in the Financial Model approved by the Parties;

5.5.5. Perform his obligations hereunder using necessary skills, competence and knowledge of the works execution technology in the course of the Project Management that will allow to:

carry out his activities in compliance with the requirements of the applicable law and in the interests of the Shareholder and the Project Beneficiary;

as may be required, within a reasonable time period, get approval of the Shareholder, of the documents prepared and (or) used in the process of performing obligation imposed upon him for the Project Management;

not sign any legally binding agreements or documents on behalf of the Shareholder and/or the Entity and/or the Project Beneficiary.

5.6. The Project Manager shall upon the Shareholder's request, but not more often than once a month, report on his performance of his obligations hereunder and on the results of the Project Management in a form agreed by the Parties.

5.7. The Project Manager shall, within 15 (Fifteen) calendar days of provision to him of the Management Accounting by the Entity, agree such Management Accounting based on the source documents provided to the Project Manager. The form and scope of the Management Accounting agreed with the Project Manager shall be the same as required by the person providing the Bank Funding and shall correspond to the Accounting Policy.

5.8. In his relations with the Shareholder and/or the Entity, act in a responsible manner and in good faith at all times.

5.9. Conflict of interest.

22

000022

5.9.1. Considering the fact that the Project Manager is a multi-skilled consultant, the Shareholder agrees that the Project Manager may maintain relations with and, among other things, provide similar services to third parties with which the Shareholder or the Entity has or potentially may have a property-related or another conflict of interest, but with regard to services (works) different from those that the Project Manager provides (performs) within the framework hereof. The Project Manager, in his turn, shall apply reasonable efforts to reveal any existing or potential conflict of interest between the Shareholder or the Entity and other existing and potential clients of the Project Manager and immediately inform the Shareholder about such conflicts.

5.9.2. In the event of occurrence of a conflict of interest in connection with the performance hereof, the Project Manager shall immediately inform the Shareholder thereof and suspend the works (provision of services) within the framework of the Project, in the course of performance of which the conflict of interest has occurred until the Shareholder's written permission to resume the Project Management.

## 6. GROUNDS FOR LIABILITY AND DEFENSE AGAINST LIABILITY

6.1. For nonperformance or improper performance of obligation hereunder, the Parties shall be liable under the laws of England and Wales.

6.2. All penalties hereunder shall be charged in excess of any losses, the payment of which a party is entitled to require from the other party (that failed to perform) in accordance with this Agreement and/or the applicable law.

6.3. The Parties shall be discharged from liability for a full or partial nonperformance of obligations hereunder for the reason of force-majeure.

6.4. The parties shall bear no liability for any claim for damages reimbursement hereunder or in connection herewith if any of the Parties does not forward to the other Party a written notice of such claim within a reasonable time of its occurrence, specifying (with a reasonable degree of detail) the subject in connection with which the claim has occurred, the nature of the claim and the amount of the claim. In any case, such a notice shall be forwarded no later than

000023

30 (Thirty) calendar days after the date of extinction, termination or expiry of the validity period hereof, or the date when the Parties and/or the Entity became aware of the circumstances that serve as the grounds for such claims, depending on which of the dates is later; an arbitration in connection with such claim shall commence within 180 (One Hundred Eighty) calendar days of the date when such notice was forwarded to any Party. Any claim for compensation of damages hereunder or in connection with it, which could be remedied, shall not provide to the Parties the right to demand compensation in case the Party has not forwarded a written notice of such claim.

6.5.  If the Project Manager does not ensure a total absence of significant (over six months) delays in the course of fulfilling the Project realization Schedules, the Project Manager shall reimburse the incurred damages in the amount and in the manner required by the applicable law.

6.6.  In the event that the Project Manager breaches the Financial Model in respect of the sales and receipt of the necessary sums, it shall take all necessary and reasonable action to commensurately defer payments under the expenditure section of the Financial Model up to the return of sales to the planned level or shall ensure that the relevant funding is attracted to cover a setback in sales at his own expense.

6.7.  Neither Party shall be liable for any claim for indemnification of losses hereunder or in connection herewith provided that such liability against which a respective claim is made:

has been caused or arisen as a result or increased because of any intentional action (including any corporate approval or direction), inaction or at the request of or with the consent of the adverse Party; or

is reimbursable from any insurance policy (or would be reimbursable if the Parties maintained the insurance coverage in effect to the extent required pursuant hereto).

6.9.  The Shareholder shall agree to guarantee that the Project Manager, when he so demands, is indemnified and protected against liability in relation to any and all lawsuits, financial obligations (including obligations under a contract or tort), direct, indirect or incidental losses and debts (including the lost profit, missed commercial transactions, deterioration of goodwill and similar damage), costs,

000024

court proceedings, damage and expenses (including fees and expenses of lawyers and other professional consultants), charged under the court ruling, borne or threatening on account of his performing the Project Manager's functions in compliance with the Shareholder's instructions, as well as those of the Chairman (Member) of the Entity's Board of Directors, save for cases when (i) such liability is reimbursable or should be reimbursable from any insurance policy or (ii) has occurred in connection with the Project Manager's failure to perform or properly perform obligations hereunder.

## 7. ENTIRE AGREEMENT

7.1.   This Agreement shall constitute the entire agreement between the Parties and supersede all prior understandings between the Parties in respect of its subject.

7.2.   Each Party confirms that on executing this Agreement it relied on no statements, representations and warranties (made by negligence and in ignorance), but for those expressly set out herein, and has no rights or legal remedies to secure its interests in connection with such statements, representations and warranties.

7.3.   Neither provision of this clause shall restrict or exclude liability for fraud.

## 8. CONFIDENTIALITY

8.1.   The Parties shall undertake to one another that neither they, nor upon their demand their respective Affiliated Persons shall ever after the date hereof impart anybody or make use to their own ends or for any purposes, other than those associated with the Project, nor shall they allow any unauthorized disclosure of any Confidential Information that they or any of them have at their disposal or may obtain before the Realization Event Date through lack of proper circumspection and care.

Sub-clause 8.1 shall not apply to the disclosure of the Confidential Information (including the Agreement's provisions) or information that the Parties agree to find confidential:

8.1.1. Should provision of such information to their professional consultants and directors, officers and employees shall be necessary and required solely for the

25

000025

purpose of obtaining advice on the issues dealing herewith, in such case, the respective Party shall ensure that such professional consultants be made aware of the confidential nature of the information and take all measures for such consultants to keep the same in secret in accordance with the terms equivalent to those stipulated in this Clause 8;

8.1.2. to the extent, to which it is required by law, any governmental authority, court or other authority entitled to pass resolutions in relation to the Parties and their Affiliated Persons, irrespective of whether the requirements in question comply with the law.

8.2. The Parties shall never make any statements or make any provision hereof or of any document mentioned herein known, without the prior written consent of the other Parties, except to the extent, to which the respective information has already legally entered the public domain.

8.3. The Parties shall exercise all measures to maintain in strict confidentiality the provisions hereof and of the documents mentioned herein that have not yet entered the public domain at a certain time. Notwithstanding the above, any Party shall be entitled to make a statement and communicate information if so required by law or rules of a government body that may apply to the respective Party, however the Parties shall attempt to discuss with each other (as far as practicable) the form of the respective statement or communication.

## 9. APPLICABLE LAW

This Agreement shall be governed by the laws of England and Wales.

## 10. ARBITRATION

10.1. Any claims, disputes and differences arising hereunder or in connection herewith (including but not limited to any matter relating to its existence, validity or termination) between any Parties shall be referred for resolution and shall be finally resolved by means of arbitration proceedings by a tribunal of three arbitrators (hereinafter referred to as the **"Arbitral Tribunal"**). The arbitration award shall be made in accordance with the Arbitration Rules of the London Court of International Arbitration effective at the relevant time. These rules shall be deemed to have been included herein by reference in the part not contradicting provisions expressly set out herein.

000026

10.2. The place of arbitration shall be London. The language of arbitration shall be English.

10.3. In the event of commencement of arbitration proceedings relating hereto, in which issues of the law or facts are raised that are common with those that are being reviewed in other proceedings, and:

10.3.1. the Parties hereto give their agreement to that; or

10.3.2. the Arbitral Tribunal, upon a petition of a Party hereto, finds it possible;

10.3.3. the arbitration proceedings relating to this Agreement shall be combined with arbitration proceedings relating to the Shareholders' Agreement; and

10.3.4. the combined proceedings shall be conducted by the same composition of the Arbitral Tribunal that was appointed initially.

10.4. In respect of any legal remedy requested by the Parties, the Arbitral Tribunal is entitled to apply any legal or court measures that it deems appropriate, including arbitration orders (provisional or permanent), and based on any orders applied by the arbitrators any competent court may grant specific performance.

10.5. Each Party shall reserve the right to petition that any court may apply the relevant jurisdiction of provisional or injunctive remedies, including, in particular, court orders as well as precautionary property seizure and judicial restraint, and such petition shall not be considered as incompatible with the arbitration agreement, and shall not be considered as waiver of the right to resort to arbitration.

10.6. If by that time this Agreement has not been terminated yet, each of the Parties shall in each case continue to perform its obligations hereunder irrespectively of the nature of the dispute and regardless of the dispute submission for settlement pursuant to this Clause (however, without restricting the Parties' rights and obligations due to the Agreement termination).

10.7. Apart from cases when information disclosure is required in compliance with an obligation stipulated by the law, for the purpose of protection or exercising a lawful right, enforcement or disputing an arbitration award by means of a fair legal procedure in a state court or another judicial body (in which cases disclosure is permitted only to the required extent), the Parties shall, as a general principle, maintain the confidentiality of all arbitration awards together with all materials created in the course and for the purposes of the arbitration proceedings

27

000027

and provided by the other Party on condition that such documents are not open to the public.

11. **AMENDMENTS**

Amendments hereto shall be effective only if made in writing and signed by the Parties (or their authorized representatives).

12. **BINDING EFFECT. SEVERABILITY OF PROVISIONS. ASSIGNMENT OF RIGHTS AND OBLIGATIONS**

12.1. This Agreement shall have effect to the benefit of and be binding on the successors to and legitimate assignees of the Parties.

12.2. If any provision hereof or a part of a provision hereof shall be found unlawful invalid or unenforceable, the remaining provisions or the remaining part of that provision shall continue in force. The Parties shall agree to amend any unlawful invalid or unenforceable part hereof upon the demand of any of the Parties under the condition that the proposed changes are lawful, enforceable and reflect the initial intention of the Parties in respect of that part of the Agreement to the utmost possible degree.

12.3. This Agreement shall have an individual bearing on the Parties and neither Party shall, without the prior written consent of the rest of the Parties, be entitled to assign, transfer, pledge, place under the management of a trust or consummate other transactions herewith, nor with any rights and obligations proceeding herefrom (or from any document, referred to herein) to the benefit of third parties not being Affiliated Persons of the Parties, nor attempt such actions.

13. **GENERAL PROVISIONS**

13.1. A person, not being a party hereto, shall have no right to seek enforcement of its provisions pursuant to the Contracts (Rights of Third Parties) Act of 1999.

13.2. Neither provision hereof shall establish or be deemed to establish relations of partnership, joint activity or similar relations between the Parties.

13.3. This Agreement may be signed in any number of counterparts, and all of them shall in the aggregate constitute the entire agreement. Each Party has the right to execute this Agreement by signing one counterpart. All Exhibits shall make an integral part hereof.

000028

C1

Exhibit 1 – Deed of Accession to the Agreement;

Exhibit 2 – Effective Articles of Association;

Exhibit 3 – Financial Model.

## 14.   AGREEMENT'S TERM AND TERMINATION

14.1.  This Agreement shall come into force on the date of its signature, but not earlier than execution of the Financial Model as Exhibit 3 hereto, and remain effective until the Parties have performed their obligations hereunder.

14.2.  This Agreement may be terminated at any time if mutually agreed to by the Parties in writing.

14.3.  If one of the events stated in Clause 3, sub-clause 3.6, hereof happens, the Shareholder shall be entitled to rescind this Agreement by giving the Project Manager written notice no less than 30 (Thirty) calendar days before the date of rescission of the Agreement.

14.4.  The Project Manager shall be entitled to discontinue this Agreement in case of material breaches by the Shareholder of its obligations contemplated in Clause 4, sub-clause 4.2, hereof by serving written notice to the Shareholder no less than 45 (Forty-five) calendar days in advance of the date of discontinuing the Agreement.

14.5.  Notwithstanding the provisions of sub-clauses 14.2-14.4 hereof, none of the Parties shall be entitled, inter alia due to a breach by any of the Parties of its obligations hereunder, to dissolve or demand through an in-court or out-of-court procedure that this Agreement be early terminated within the first 12 (Twelve) months as of the date of signing this Agreement. During the said period, this Agreement may be terminated solely if mutually consented to by the Parties and only if a written out-of-court agreement of the Parties for the early termination of the Agreement has been reached by the Parties. In this context, within the time stated in this sub-clause, the Project Manager shall have no right to raise any claims for the Fee or for being paid other sums provided for in Clause 3 hereof.

14.6.  Termination of this Agreement, irrespective of the grounds therefor, shall cause no prejudice to the rights and financial obligations existing as on the date of termination.

14.7.  In case of this Agreement termination on any ground, the Project Manager shall undertake to hand over the operations to the person or persons nominated by the

000029

Shareholder within 30 (Thirty) calendar days of given notice of the Agreement termination.

14.8. Termination or expiration of the term of this Agreement shall have no impact on the effect of this Agreement's provisions dealing with definitions and interpretation, confidentiality, applicable law, arbitration, as well as obligations arising out of Clause 3 hereof, which shall remain in force after termination or expiration of the term of this Agreement until their discharge.

## 15. COMMUNICATIONS

Any notice or another communication hereunder shall be forwarded by special delivery or by a recognized international courier service with delivery prepaid, and may be delivered to the Party's address given in this clause or to another address, of which such Party may give a notice hereunder, for the specified purpose.

The Parties' addresses for the purposes of this Agreement:

*In the case of the Shareholder:*

Attn: Director, Prins Bernhardplein 200, 1097 JB, Amsterdam, the Netherlands, and to the address of Roman Viktorovich Trotsenko, 12 Presnenskaya naberezhnaya, Moscow, Russia.

*In the case of the Project Manager:*

Attn: Dmitry Valerievich Lutsenko, Apt. 158, blg. 2, 1G, ul. Minskaya, 119590, Moscow, Russian Federation.

The forwarded notice shall be deemed received:

when delivered by special delivery – at the moment of delivery, and

when delivered by a recognized international courier mail with delivery prepaid – 3 (Three) Business Days after the date of mailing to the relevant address.

C1

To avoid doubt, the notice hereunder shall not be deemed to have been delivered in a proper manner in case it is delivered by fax or e-mail.

**IN WITNESS WHEREOF, THE PARTIES** (duly authorized representatives of the Parties) signed this Agreement on the date first above written.

**MRC Skyscrapers Management B.V.**

Signature:

S.I. Rep   N.H. Raijer
Intertrust (Netherlands) B.V.
Managing Director

**ROMAN VIKTOROVICH TROTSENKO**

Signature:

**DMITRY VALERIEVICH LUTSENKO**

Signature:

31



## EXHIBIT 1 – Deed of Accession to the Agreement

**DEED OF ACCESSION TO THE AGREEMENT** dated ●, signed ●, address: ●
(**Binding party**).

SUPPLEMENT to the Project Management Agreement ("Agreement") dated 2013 entered into by and between (1) **MRC Skyscrapers Management B.V.**, a company incorporated under the laws of the Netherlands under registration number 27269773 at the address: Prins Bernhardplein 200, 1097 JB, Amsterdam, the Netherlands and **Mr. Roman Viktorovich Trotsenko**, a citizen of the RF (passport series 45 10 No. 482334, issued by the Otradnoye District Department of the OUFMS of Russia for Moscow, place of residence: Apt. 161, 18 "V" Altufievskoye Shosse, Moscow (together hereinafter referred to as the "**Shareholder**"), on the one hand, and (2) **DMITRY VALERIEVICH LUTSENKO**, a citizen of the Russian Federation, passport No.4002 180226, residing at: Apartment 8, 1 Naberzhnaya reki Fontanki, Saint-Petersburg, Russian Federation (hereinafter referred to as the "**Project Manager**"), on the other hand, [with amendments in accordance with [specify the details of any document stating amendments to the initial document]].

SUBSTANTIAL PROVISIONS:

1. The Binding Party confirms that a copy of the Agreement has been provided to it and it has acquainted itself with the copy, and assumes an obligation to each of the other parties to the Agreement to observe all terms and conditions and be bound by all terms and conditions of the Agreement as if it were a party to the Agreement, and not to do acts that would contradict the terms and conditions of the Agreement.

2. This Deed shall be governed by the law of England and Wells and shall be construed in accordance therewith.

000032

C1

EXECUTED as a deed on the date first above written.

EXECUTED as a deed                    Director:
by the company ● [
and signed on its behalf by            Director/Secretary:
two duly authorized
officers


EXECUTED  and DELIVERED
As a deed
● Witnessed by:


Signature of the witness:

Name of the witness:

Address of the witness:


Occupation of the witness:

33

000033

C1

**EXHIBIT 2 – ENTITY'S CURRENT ARTICLES OF ASSOCIATION, AS EFFECTIVE ON THE DATE HEREOF**

000034

Exhibit 2 – Entity's current articles of association, as effective on the date hereof.

«УТВЕРЖДЕН»
Решением годового общего собрания
акционеров (Протокол б/н от «17» июня 2013 года)

# УСТАВ
### Закрытого акционерного общества
## «Башня Федерация»
(новая редакция №10)

город Москва, 2013 год

000035

## 1. ОБЩИЕ ПОЛОЖЕНИЯ

В соответствии с решением годового общего собрания акционеров Закрытого акционерного общества «Поток энд 0458», оформленного Протоколом годового общего собрания акционеров б/н от 17 июня 2013 года, Закрытое акционерное общество «Поток энд 0458» переименовано в Закрытое акционерное общество «Башня Федерация».

1.1. Полное фирменное наименование Общества на русском языке:

Закрытое акционерное общество «Башня Федерация».

Полное фирменное наименование Общества на английском языке:

**Closed Joint Stock company «Federation Tower».**

Сокращенное фирменное наименование Общества на русском языке:

**ЗАО «Башня Федерация».**

Сокращенное фирменное наименование Общества на английском языке:

**CJSC «Federation Tower».**

1.2. Общество является коммерческой организацией.

1.3. Общество является юридическим лицом и свою деятельность осуществляет на основании настоящего Устава и действующего законодательства.

1.4. Общество вправе в установленном порядке открывать банковские счета на территории Российской Федерации и за ее пределами. Общество имеет круглую печать, содержащую его полное фирменное наименование на русском языке и указание на место его нахождения. Общество имеет штампы и бланки со своим наименованием, собственную эмблему и другие средства визуальной идентификации.

1.5. Акционерное общество «Башня Федерация» является закрытым акционерным обществом.

1.6. Акционерами Общества могут быть граждане и/или юридические лица.

Количество акционеров Общества не должно превышать пятидесяти.

1.7. Место нахождения Общества определяется местом его государственной регистрации.

1.8. Место нахождения постоянно действующего исполнительного органа (Генерального директора) Общества: Российская Федерация, г. Москва, Пресненская набережная, д.12.

## 2. ЦЕЛИ И ПРЕДМЕТ ДЕЯТЕЛЬНОСТИ

2.1. Цель деятельности Общества - извлечение прибыли.

2.2. Общество может иметь гражданские права и нести гражданские обязанности, необходимые для осуществления любых видов деятельности, не запрещенных законом, в том числе Общество осуществляет:

- строительная деятельность (выполнение строительно-монтажных, проектных работ, инженерных изысканий, производство строительных материалов, изделий и конструкций);
- выполнение ремонтных, строительных, строительно-монтажных, реставрационных, реконструкционных, специальных и других работ на объектах промышленного, гражданского, и культурного назначение, в том числе имеющих историческую и культурную ценность;
- проведение реконструкции зданий и сооружений на объектах промышленного, гражданского и культурного назначения, в том числе имеющих историческую и культурную ценность
- деятельность по оказанию услуг по ремонту и оборудованию, благоустройству жилых и не жилых помещений;
- развитие проектно-производственной и строительной базы, как самостоятельной, так и в составе объединений, центров ассоциаций и т. д. для обеспечения строительства, экспериментального строительства и наиболее полного удовлетворения общественных
- потребностей;
- эксплуатационно-ремонтная деятельность, осуществляемая в жилых, промышленных и общественных зданиях и сооружениях, и деятельность по управлению жилым фондом товариществами собственников;
- коммерческая и посредническая деятельность с движимым и недвижимым имуществом;
- сдача в аренду зданий и сооружений, основных средств;
- инвестиционно-финансовая деятельность;
- эксплуатационно-ремонтная деятельность, осуществляемая в жилых, промышленных и общественных зданиях и сооружениях, и деятельность по управлению жилым фондом, товариществами собственников;
- коммерческая и посредническая деятельность с движимым и недвижимым имуществом;
- сдача в аренду зданий и сооружений, основных средств;
- брокерская деятельность;
- оказание юридических, правовых, консалтинговых услуг;



- риэлтерская деятельность;
- производство и реализация изделий производственно-технического и промышленного назначения и оборудования;
- транспортная деятельность по перевозке пассажиров и грузов, экспедиционному обслуживанию, погрузочно-разгрузочными и такелажными работами, услугами по хранению грузов;
- перевозочная, транспортно-экспедиционная и другая деятельность, связанная с осуществлением транспортного процесса, ремонтом и техническим обслуживанием транспортных средств на автомобильном транспорте, со строительством ремонтом, содержанием автомобильных дорог и дорожных сооружений;
- торговля строительными материалами и оборудованием;
- оказание услуг складского хозяйства;
- деятельность по эксплуатации инженерных сетей, коммуникаций и сооружений, содержанию дорожно-мостового хозяйства;
- продажа новых и бывших в употреблении автотранспортных средств;
- издательская деятельность;
- полиграфическая деятельность;
- тиражирование и распространение, сдача в прокат и аренду, публичная коммерческая и не коммерческая демонстрация, трансляция по кабельному телевидению всех кино- и видеофильмов российского, зарубежного и совместного производства;
- организация и ведение гостиничного хозяйства, прокат бытовой техники, туристического снаряжения, любого оборудования и автомобилей;
- деятельность по производству, организации и реализации потребления продукции общественного питания, в том числе организация работы баров, ресторанов, столовых;
- оптово-розничная торговля продовольственными и не продовольственными товарами, продуктами общественного питания[a]
- экспортно-импортная и иная внешнеэкономическая деятельность;
- иные виды деятельности, в том числе внешнеэкономическая, не запрещенные российским законодательством.

2.3. Отдельными видами деятельности, перечень которых определяется федеральными законами РФ, Общество может заниматься только на основании специального разрешения (лицензии).

## 3. ПРАВОВОЙ СТАТУС ОБЩЕСТВА

3.1. Общество считается созданным как юридическое лицо с момента его государственной регистрации.

3.2. Общество для достижения целей своей деятельности может от своего имени приобретать и осуществлять имущественные и личные неимущественные права, предоставляемые законодательством закрытым акционерным обществам, нести обязанности, от своего имени совершать любые допустимые законом сделки, быть истцом и ответчиком в суде.

3.3. Общество имеет в собственности обособленное имущество, учитываемое на его самостоятельном балансе.

3.4. Общество несет ответственность по своим обязательствам всем принадлежащим ему имуществом. Общество не отвечает по обязательствам государства и своих акционеров, если иное не предусмотрено законом или договором. Акционеры отвечают по обязательствам Общества в пределах стоимости принадлежащих им акций. Акционеры, не полностью оплатившие акции, несут солидарную ответственность по обязательствам Общества в пределах неоплаченной части стоимости принадлежащих им акций.

3.5. Общество может создавать самостоятельно и совместно с третьими лицами организации с правами юридического лица в любых допустимых законом организационно-правовых формах. Общество вправе иметь дочерние и зависимые общества с правами юридического лица.

3.6. Общество может создавать филиалы и открывать представительства на территории РФ и за рубежом.

3.7. Создание филиалов и представительств за границей регулируется законодательством РФ и соответствующих государств.

3.8. Филиалы и представительства не являются юридическими лицами и наделяются Обществом имуществом, которое может учитываться как на их отдельных балансах, так и на балансе Общества.

3

000037

3.9. Филиалы и представительства осуществляют деятельность, от имени Общества. Общество несет ответственность за деятельность своих филиалов и представительств. Руководители филиалов и представительств назначаются Обществом и действуют на основании выданных Обществом доверенностей. Доверенности руководителям филиалов и представительств от имени Общества выдает единоличный исполнительный орган Общества.

3.10. Зависимые и дочерние общества на территории РФ создаются в соответствии с законодательством РФ, а за пределами территории РФ - в соответствии с законодательством иностранного государства по месту нахождения дочернего или зависимого общества, если иное не предусмотрено международным договором РФ.

3.11. Общество в целях реализации технической, социальной, экономической и налоговой политики несет ответственность за сохранность документов (управленческих, финансово-хозяйственных, по личному составу и др.), обеспечивает передачу на государственное хранение документов, имеющих научно-историческое значение; хранит и использует в установленном порядке документы по личному составу.

Общество хранит документы по месту нахождения Генерального директора Общества.

3.12. Общество в процессе своей деятельности ведет работу по учету и бронированию военнообязанных и призывников в обеспечение выполнения Федеральных Законов: «О мобилизационной подготовке и мобилизации в Российской Федерации», «О воинской обязанности и военной службе», нормативных и правовых актов Президента РФ, Правительства РФ в области обороны, мобилизационной подготовки и мобилизации.

Персональная ответственность за проведение этой работы возлагается на Генерального директора Общества.

3.13. Общество вправе совершать все действия, не запрещенные действующим законодательством. Деятельность Общества не ограничивается оговоренной в Уставе. Сделки, выходящие за пределы уставной деятельности, но не противоречащие законодательству РФ, являются действительными.

## 4. ПОРЯДОК ФОРМИРОВАНИЯ УСТАВНОГО КАПИТАЛА, РАЗМЕЩЕНИЕ АКЦИЙ И ДРУГИХ ЦЕННЫХ БУМАГ

4.1. Уставный капитал Общества состоит из номинальной стоимости акций Общества, приобретенных акционерами. Уставный капитал определяет минимальный размер имущества, гарантирующий интересы его кредиторов, и составляет 300 000 000 (Триста миллионов) рублей. Все акции, размещаемые Обществом, являются именными. Общее количество всех размещенных обыкновенных именных бездокументарных акций Общества – 3 000 000 (Три миллиона) штук номинальной стоимостью 100 (Сто) рублей каждая. На момент регистрации настоящей редакции Устава Общества уставный капитал оплачен полностью.

4.2. Не допускается освобождение акционера от обязанности оплаты акций.

4.3. По решению Общего собрания акционеров уставный капитал может быть увеличен как путем увеличения номинальной стоимости акций, так и за счет размещения дополнительных акций.

4.4. Общество вправе направить всю чистую прибыль, или ее часть, полученную по итогам финансового года, на оплату увеличения уставного капитала.

4.5. Оплата акций, распределяемых среди учредителей Общества при его учреждении, дополнительных акций, размещаемых посредством подписки, может осуществляться деньгами, ценными бумагами, другими вещами или имущественными правами либо иными правами, имеющими денежную оценку. Оплата дополнительных акций путем зачета денежных требований к Обществу допускается в случае их размещения посредством закрытой подписки. Форма оплаты акций Общества при его учреждении определяется договором о создании Общества, а дополнительных акций - решением о размещении дополнительных акций.

4.6. Общество вправе по решению Общего собрания акционеров уменьшить уставный капитал, как путем уменьшения номинальной стоимости акций, так и путем сокращения их общего количества, а также путем погашения приобретенных или выкупленных Обществом акций.

4.7. Общество может уменьшать уставный капитал при условии, если в результате этого его размер не станет меньше минимального размера уставного капитала, установленного законом.

4.8. В случаях, прямо предусмотренных законом, Общество обязано объявить об уменьшении уставного капитала.

4.9. В течение 3 (Трех) рабочих дней после принятия Обществом решения об уменьшении его уставного капитала оно обязано сообщить о таком решении в орган, осуществляющий государственную регистрацию юридических лиц, и дважды с периодичностью один раз в месяц поместить в средствах массовой информации, в которых опубликовываются данные о государственной регистрации юридических лиц, уведомление об уменьшении его уставного капитала.

Кредитор Общества, если его права требования возникли до опубликования уведомления об уменьшении уставного капитала Общества, не позднее 30 дней с даты последнего опубликования такого уведом-

000038

4

...ления вправе потребовать от Общества досрочного исполнения соответствующего обязательства, а при невозможности его досрочного исполнения - прекращения обязательства и возмещения связанных с этим убытков.

## 5. ПРАВА И ОБЯЗАННОСТИ АКЦИОНЕРОВ. РЕЕСТР АКЦИОНЕРОВ

5.1. Каждая обыкновенная именная бездокументарная акция предоставляет ее владельцу-акционеру одинаковый объем прав.

5.2. Акция, принадлежащая акционеру Общества, не предоставляет права голоса до момента ее полной оплаты, за исключением акций, приобретаемых учредителями при создании Общества.

5.3. Акционер-владелец обыкновенных акций Общества имеет право участвовать в управлении делами Общества, в том числе:

- участвовать в Общих собраниях акционеров Общества с правом голоса по всем вопросам его компетенции (лично или через представителя);
- избирать и быть избранными в органы управления Обществом;
- получать объявленные дивиденды;
- получать часть имущества Общества в случае ликвидации Общества.

5.4. Акционеры вправе иметь другие права, предоставляемые акционерам настоящим Уставом и действующим законодательством РФ.

5.5. Акционер обязан:

- оплатить приобретаемые им акции в сроки и в порядке, установленные настоящим Уставом и действующим законодательством. Общее собрание акционеров Общества вправе начислять акционеру дивиденды лишь с момента полной оплаты акций;
- соблюдать требования Устава и выполнять решения органов управления Общества, принятые в рамках их компетенции;
- не разглашать сведения, отнесенные к коммерческой тайне.

5.6. Акционеры могут нести и другие обязанности, предусмотренные настоящим Уставом, Договором о создании Общества или действующим законодательством РФ.

5.7. Держателем реестра акционеров может быть Общество или специализированный регистратор.

5.8. Лицо, зарегистрированное в реестре акционеров, обязано своевременно информировать держателя реестра акционеров об изменении своих данных. В случае непредставления им информации об изменении своих данных Общество и регистратор не несут ответственности за причиненные в связи с этим убытки.

5.9. Внесение записей в реестр акционеров и отказ от внесения записей осуществляются по основаниям и в порядке, установленном законом. Отказ от внесения записи в реестр акционеров может быть обжалован в суд.

5.10. По требованию акционера или номинального держателя акций держатель реестра акционеров Общества обязан подтвердить их права путем выдачи выписки из реестра акционеров.

## 6. УПРАВЛЕНИЕ ОБЩЕСТВОМ. ОБЩЕЕ СОБРАНИЕ АКЦИОНЕРОВ

6.1. Органами управления Общества являются:

- Общее собрание акционеров;
- Совет директоров;
- Генеральный директор.

Высшим органом управления Общества является Общее собрание акционеров Общества. Один раз в год Общество проводит годовое Общее собрание акционеров Общества.

Проводимые помимо годового Общие собрания акционеров являются внеочередными.

6.2. Совет директоров Общества осуществляет общее руководство деятельностью Общества.

6.3. Единоличным исполнительным органом Общества является Генеральный директор или управляющая организация.

6.4. Годовое Общее собрание акционеров Общества должно быть проведено в период с 1 марта по 30 июня в год, следующий за отчетным финансовым годом. На годовом Общем собрании акционеров решаются вопросы об избрании Совета директоров Общества, Ревизора Общества, утверждении аудитора Общества, рассматривается годовой отчет Общества и другие документы, иные вопросы, предусмотренные законом.

Годовое Общее собрание акционеров вправе рассмотреть любой вопрос, который в соответствии с настоящим Уставом и действующим законодательством относится к компетенции Общего собрания акционеров и включен в повестку дня с соблюдением необходимых процедур.

6.5. К компетенции Общего собрания акционеров относятся следующие вопросы:

5

000039



6.5.1. Внесение изменений и дополнений в Устав Общества, утверждение Устава в новой редакции.

6.5.2. Реорганизация Общества.

6.5.3. Ликвидация Общества, назначение ликвидационной комиссии и утверждение промежуточного и окончательного ликвидационных балансов.

6.5.4. Определение количественного состава Совета директоров Общества, избрание и досрочное прекращение полномочий членов Совета директоров Общества;

6.5.5. Определение количества, номинальной стоимости, категории (типа) объявленных акций и прав, предоставляемых этими акциями.

6.5.6. Увеличение уставного капитала Общества путем увеличения номинальной стоимости акций или путем размещения дополнительных акций.

6.5.7. Уменьшение уставного капитала Общества путем уменьшения номинальной стоимости акций, путем приобретения Обществом части акций в целях сокращения их общего количества, а также путем погашения приобретенных или выкупленных Обществом акций.

6.5.8. Избрание Ревизора Общества и досрочное прекращение его полномочий.

6.5.9. Утверждение аудитора Общества.

6.5.10. Утверждение годовых отчетов, годовой бухгалтерской отчетности, в том числе отчетов о прибылях и убытках (счетов прибылей и убытков) Общества, а также распределение прибыли, в том числе выплата (объявление) дивидендов, и убытков Общества по результатам финансового года.

6.5.11. Утверждение внутренних документов, регулирующих деятельность органов Общества.

6.5.12. Избрание членов счетной комиссии и досрочное прекращение их полномочий.

6.5.13. Определение порядка ведения Общего собрания.

6.5.14. Дробление и консолидация акций.

6.5.15. Принятие решений об одобрении сделок, в которых имеется заинтересованность, в случаях, установленных действующим законодательством РФ.

6.5.16. Принятие решений об одобрении крупных сделок в случаях, установленных действующим законодательством РФ.

6.5.17. Принятие решений об одобрении сделок, в случаях, если такое одобрение предусмотрено действующим Трудовым договором с Генеральным директором Общества или действующим договором с управляющей организацией Общества.

6.5.18. Приобретение Обществом размещенных акций в случаях, установленных законом.

6.5.19. Принятие решений об участии Общества в холдинговых компаниях, финансово-промышленных группах, ассоциациях и иных объединениях коммерческих организаций.

6.5.20. Избрание Генерального директора Общества, досрочное прекращение его полномочий

6.5.21. Принятие решения о распоряжении акциями и/или долями в уставном капитале иных юридических лиц, принадлежащих Обществу на праве собственности.

6.5.22. Размещение Обществом облигаций и иных эмиссионных ценных бумаг.

6.5.23. Приобретение размещенных Обществом облигаций и иных ценных бумаг в случаях, установленных законом.

6.6. Вопросы, отнесенные к компетенции Общего собрания акционеров Общества, не могут быть переданы на решение единоличному исполнительному органу общества.

Вопросы, отнесенные к компетенции Общего собрания акционеров Общества, но могут быть переданы на решение Совету директоров Общества.

6.7. Решение вопроса о проведении Общего собрания акционеров Общества и об утверждении его повестки дня относится к компетенции Совета директоров Общества.

6.8. Общее собрание акционеров Общества правомочно (имеет кворум), если в нем приняли участие акционеры (их представители), обладающие в совокупности более чем половиной голосов размещенных голосующих акций Общества.

6.9. Решение Общего собрания акционеров Общества по вопросу, поставленному на голосование, принимается большинством голосов акционеров-владельцев голосующих акций Общества, принимающих участие в Общем собрании акционеров Общества. Решение по вопросам, указанным в подпунктах 6.5.1 - 6.5.3., 6.5.5., 6.5.18 настоящего Устава принимаются квалифицированным большинством в 3/4 (три четверти) голосов акционеров - владельцев голосующих акций, принимающих участие в Общем собрании. Если для решения Общего собрания акционеров должны приниматься каким-либо законом установлено, что квалифицированным большинством голосов должны приниматься каким-либо другие решения, помимо указанных в настоящем пункте, Общество будет обязано руководствоваться нормой закона в соответствующих случаях.

6.10. Решение об одобрении сделки, в совершении которой имеется заинтересованность (п. 6.5.15 Устава), принимается Общим собранием акционеров Общества большинством голосов всех не заинтересованных в сделке акционеров - владельцев голосующих акций.

6.11. Сообщение акционерам о проведении Общего собрания акционеров Общества осуществляется путем направления им письменного уведомления.



6.12. Сообщение о проведении Общего собрания акционеров Общества направляется акционерам заказными письмами или вручением под роспись не позднее чем за 20 дней, а сообщение о проведении общего собрания акционеров, повестка дня которого содержит вопрос о реорганизации Общества, - не позднее чем за 30 дней до даты его проведения.

6.13. Подготовка к проведению Общего собрания акционеров Общества, в том числе внеочередного и повторного собрания, осуществляется в порядке и в сроки, устанавливаемые законом, настоящим Уставом.

6.14. При подготовке Общего собрания акционерам должна быть обеспечена возможность ознакомиться с информацией и материалами в объеме, не меньшем, чем предусмотрено законом.

6.15. Общее собрание акционеров Общества ведет Председательствующий на Общем собрании, избираемый из числа акционеров Общества и их представителей простым большинством голосов.

6.16. При отсутствии кворума для проведения годового Общего собрания акционеров Общества должно быть проведено повторное Общее собрание акционеров Общества с той же повесткой дня. При отсутствии кворума для проведения внеочередного Общего собрания акционеров Общества может быть проведено повторное Общее собрание акционеров Общества с той же повесткой дня. Повторное Общее собрание акционеров Общества правомочно, если в нем приняли участие акционеры, обладающие в совокупности не менее чем 30% (тридцатью процентами) голосов размещенных голосующих акций Общества.

6.17. Внеочередное Общее собрание акционеров Общества проводится по решению Совета директоров Общества на основании его собственной инициативы, требования Ревизора, аудитора Общества, а также акционеров (акционера), являющихся владельцами не менее чем 10 процентов голосующих акций Общества на дату предъявления требования.

6.18. Внеочередное Общее собрание акционеров Общества созывается и проводится в порядке, установленном законом, настоящим Уставом.

6.19. В случае, если в течение установленного законом срока Советом директоров Общества не принято решение о созыве внеочередного Общего собрания акционеров Общества, или принято решение об отказе в его созыве, орган Общества или лица, требующие его созыва, вправе обратиться в суд с требованием о понуждении Общества провести внеочередное Общее собрание акционеров Общества.

6.20. Решения на Общем собрании акционеров Общества принимаются открытым голосованием по принципу «одна голосующая акция - один голос», за исключением случаев проведения кумулятивного голосования.

6.21. Голосование на Общем собрании акционеров Общества может осуществляться бюллетенями для голосования. Голосование по вопросам повестки дня Общего собрания акционеров Общества, проводимого в форме заочного голосования, осуществляется только бюллетенями для голосования.

6.22. Решение Общего собрания акционеров Общества может быть принято без проведения собрания (совместного присутствия акционеров для обсуждения вопросов повестки дня и принятия решений по вопросам, поставленным на голосование) путем проведения заочного голосования (опросным путем). Решения путем проведения заочного голосования могут быть приняты лишь при условии, если в соответствии с законом для рассматриваемых вопросов не установлен иной порядок принятия решений.

6.23. Принятие решений путем заочного голосования осуществляется в порядке, установленном законом, настоящим Уставом.

6.24. Акционер вправе обжаловать в суд решение, принятое с нарушением требований закона, иных правовых актов, Устава Общества, в случае, если он не принимал участия в Общем собрании акционеров Общества или голосовал против принятия такого решения и указанным решением нарушены его права и законные интересы.

6.25. Не позднее 3 (три) рабочих дней после закрытия Общего собрания акционеров Общества составляется протокол собрания акционеров в двух экземплярах, которые подписываются Председательствующим на Общем собрании акционеров и секретарем Общего собрания акционеров. В протоколе Общего собрания акционеров Общества должны содержаться основные положения выступлений, вопросы, поставленные на голосование, и итоги голосования по ним, решения, принятые собранием.

## 7. СОВЕТ ДИРЕКТОРОВ ОБЩЕСТВА

7.1. Совет директоров Общества осуществляет общее руководство деятельностью Общества, за исключением решения вопросов, отнесенных законом и настоящим Уставом к компетенции Общего собрания акционеров Общества.

7.2. К компетенции Совета директоров Общества относятся следующие вопросы:

7.2.1. Определение приоритетных направлений деятельности Общества;

7.2.2. Созыв годового и внеочередного Общих собраний акционеров Общества, за исключением случаев, предусмотренных пунктом 8 статьи 55 Федерального закона «Об акционерных обществах»;

7.2.3. Утверждение повестки дня Общего собрания акционеров Общества;

7

000041

7.2.4. Определение даты составления списка лиц, имеющих право на участие в Общем собрании акционеров Общества, и другие вопросы, отнесенные к компетенции Совета директоров Общества в соответствии с положениями главы VII Федерального закона «Об акционерных обществах» и связанные с подготовкой и проведением Общего собрания акционеров Общества;

7.2.5. Определение цены (денежной оценки) имущества, цены размещения и выкупа эмиссионных ценных бумаг в случаях, предусмотренных Федеральным законом «Об акционерных обществах»;

7.2.6. Рекомендации по размеру выплачиваемых Ревизору Общества вознаграждений и компенсаций и определение размера оплаты услуг аудитора;

7.2.7. Рекомендации по размеру дивиденда по акциям и порядку его выплаты;

7.2.8. Использование резервного фонда и иных фондов Общества;

7.2.9. Утверждение внутренних документов Общества, за исключением внутренних документов, утверждение которых отнесено Федеральным законом «Об акционерных обществах» и настоящим Уставом к компетенции Общего собрания акционеров Общества, а также иных внутренних документов Общества, утверждение которых отнесено настоящим Уставом к компетенции единоличного исполнительного органа Общества;

7.2.10. Создание и ликвидация филиалов и открытие и ликвидация представительств, утверждение положений о филиалах и представительствах, внесение в них изменений и дополнений;

7.2.11. Внесение в Устав Общества изменений, связанных с созданием филиалов, открытием представительств Общества и их ликвидацией;

7.2.12. Одобрение крупных сделок в случаях, предусмотренных главой X Федерального закона «Об акционерных обществах»;

7.2.13. Одобрение сделок, предусмотренных главой XI Федерального закона «Об акционерных обществах»;

7.2.14. Утверждение регистратора Общества и условий договора с ним, а также расторжение договора с ним;

7.2.15. Принятие решений о совершении Обществом сделок, связанных с реализацией или отчуждением иным способом площадей (имущественных прав/прав требования на них) многофункционального офисно-рекреационного комплекса «Федерация», состоящего из Башни А и Башни Б, расположенного по адресу: город Москва, Пресненская набережная, дом 12, ММДЦ «Москва-Сити», уч. №13;

7.2.16. Иные вопросы, предусмотренные Федеральным законом «Об акционерных обществах» и настоящим Уставом.

7.3. Вопросы, отнесенные к компетенции Совета директоров Общества, не могут быть переданы на решение исполнительному органу Общества.

7.4. Члены Совета директоров Общества избираются Общим собранием акционеров Общества кумулятивным голосованием в количестве 5 (пять) человек, на срок до следующего годового Общего собрания акционеров Общества. Если годовое Общее собрание акционеров Общества не было проведено в сроки, установленные пунктом 1 статьи 47 Федерального закона «Об акционерных обществах», полномочия Совета директоров Общества прекращаются, за исключением полномочий по подготовке, созыву и проведению годового Общего собрания акционеров Общества.

Лица, избранные в состав Совета директоров Общества, могут переизбираться неограниченное число раз.

По решению Общего собрания акционеров Общества, полномочия всех членов Совета директоров Общества могут быть прекращены досрочно.

7.5. Членом Совета директоров Общества может быть только физическое лицо. Член Совета директоров Общества может не быть акционером Общества.

Лицо, осуществляющее функции единоличного исполнительного органа, не может быть одновременно Председателем Совета директоров Общества.

7.6. Председатель Совета директоров Общества избирается членами Совета директоров Общества из их числа большинством голосов от общего числа членов Совета директоров Общества.

Совет директоров Общества вправе в любое время переизбрать своего Председателя большинством голосов от общего числа членов Совета директоров Общества.

7.7. Председатель Совета директоров Общества организует его работу, созывает заседания Совета директоров Общества и председательствует на них, организует на заседаниях ведение протокола.

7.8. В случае отсутствия Председателя Совета директоров Общества, его функции осуществляет один из членов Совета директоров Общества по решению Совета директоров Общества.

7.9. Заседание Совета директоров Общества созывается Председателем Совета директоров Общества по его собственной инициативе, по требованию члена Совета директоров Общества, Ревизора Общества или аудитора Общества, единоличного исполнительного органа Общества. Уведомление о заседании, содержащее сведения о повестке дня заседания, направляется членам Совета директоров Общества не позднее, чем за 3 (три) дня до даты заседания курьером, электронной почтой, телеграммой.

000042



7.10. Заседание Совета директоров Общества правомочно, если на нем присутствуют не менее 4 (Четыре) членов Совета директоров Общества. При определении наличия кворума и результатов голосования по вопросам повестки дня учитывается письменное мнение члена Совета директоров Общества, отсутствующего на заседании Совета директоров.

7.11. Решение по вопросу, указанному в подпункте 7.2.15 настоящего Устава, принимается всеми членами Совета директоров Общества единогласно, при этом не учитываются голоса выбывших членов Совета директоров Общества.

Решения по остальным вопросам компетенции Совета директоров Общества принимаются большинством голосов членов Совета директоров Общества, принимающих участие в заседании.

При решении вопросов на заседании Совета директоров Общества каждый член Совета директоров Общества обладает одним голосом. Передача права голоса членом Совета директоров Общества иному лицу, в том числе другому члену Совета директоров Общества, не допускается.

Решения Совета директоров Общества могут приниматься заочным голосованием.

7.12. На заседании Совета директоров Общества ведется протокол. Протокол заседания Совета директоров Общества составляется не позднее трех дней после его проведения. Протокол заседания Совета директоров Общества подписывается Председательствующим на заседании Совета директоров Общества.

## 8. ЕДИНОЛИЧНЫЙ ИСПОЛНИТЕЛЬНЫЙ ОРГАН ОБЩЕСТВА (ГЕНЕРАЛЬНЫЙ ДИРЕКТОР/УПРАВЛЯЮЩАЯ ОРГАНИЗАЦИЯ)

8.1. Генеральный директор избирается Общим Собранием акционеров Общества сроком на 3 года и является единоличным исполнительным органом Общества.

8.2. По решению Общего собрания акционеров Общества, полномочия единоличного исполнительного органа Общества могут быть переданы по договору коммерческой организации (управляющей организации) в пределах полномочий, определенных для Генерального директора Общества. Решение о передаче полномочий управляющей компании принимается большинством голосов акционеров - владельцев голосующих акций Общества, принимающих участие в собрании.

8.3. Генеральный директор может быть избран из числа акционеров, либо Генеральным директором может быть избрано любое другое лицо, обладающее, по мнению большинства акционеров, необходимыми знаниями и опытом. Генеральный директор избирается Общим Собранием акционеров Общества большинством голосов акционеров - владельцев голосующих акций Общества, принимающих участие в собрании.

8.4. Единоличный исполнительный орган решает все вопросы текущей деятельности Общества, за исключением вопросов, отнесенных к компетенции Общего собрания акционеров Общества и Совета директоров Общества.

8.5. Генеральный директор без доверенности действует от имени Общества, представляет его интересы, совершает сделки от имени Общества, утверждает штаты, издает приказы и дает указания, обязательные для исполнения всеми работниками Общества.

8.6. Права и обязанности Генерального директора по осуществлению руководства текущей деятельностью Общества определяются правовыми актами РФ, настоящим Уставом и Договором. Договор с Генеральным директором (управляющей организацией) от имени Общества подписывает Председатель Совета директоров Общества или лицо, уполномоченное Советом директоров Общества.

8.7. Общество вправе в любой момент расторгнуть Договор с Генеральным директором (управляющей организацией).

8.8. Генеральный директор (управляющая организация) Общества:

действует в пределах прав, предоставленных настоящим Уставом, договором, заключенным с Генеральным директором (управляющей организацией), иными внутренними документами Общества, утвержденными Общим собранием акционеров Общества;

обеспечивает выполнение решений Общего собрания акционеров Общества;

распоряжается имуществом Общества в пределах, установленных настоящим Уставом, договором, заключенным с Генеральным директором (управляющей организацией), иными внутренними документами Общества, утвержденными Общим собранием акционеров Общества, Советом директоров Общества и действующим законодательством;

определяет организационную структуру Общества, утверждает правила, процедуры и другие внутренние документы Общества, за исключением документов, утверждаемых Общим собранием акционеров и Советом директоров Общества;

утверждает штатное расписание Общества, филиалов и представительств;

принимает на работу и увольняет с работы сотрудников, в том числе назначает и увольняет своих заместителей, главного бухгалтера, руководителей подразделений, филиалов и представительств;

поощряет работников Общества, а также налагает на них взыскания;

9

000043



— открывает в банках расчетный, валютный и другие счета Общества, заключает договоры и соверша-
ет иные сделки;
— организует бухгалтерский учет и отчетность;
— решает другие вопросы текущей деятельности Общества.

## 9. КОНТРОЛЬ ЗА ФИНАНСОВО-ХОЗЯЙСТВЕННОЙ ДЕЯТЕЛЬНОСТЬЮ

9.1. Для осуществления контроля за финансово-хозяйственной деятельностью Общее собрание ак-
ционеров избирает Ревизора.

9.2. Компетенция и порядок деятельности Ревизора определяются законодательством, настоящим Ус-
тавом.

9.3. Ревизор не может одновременно занимать какие-либо должности в органах управления Общест-
ва.

9.4. Проверки (ревизии) финансово-хозяйственной деятельности осуществляются Ревизором по ито-
гам деятельности Общества за год, а также во всякое время по собственной инициативе, решению Общего
собрания акционеров, Совета директоров Общества или по требованию акционера (акционеров), владею-
щего в совокупности не менее чем 10% (десятью процентами) голосующих акций.

9.5. Ревизор вправе требовать от должностных лиц Общества предоставления всех необходимых до-
кументов о финансово-хозяйственной деятельности. Ревизор вправе привлекать к своей работе экспертов и
консультантов, работа которых оплачивается за счет Общества.

9.6. Ревизор вправе потребовать созыва внеочередного Общего собрания акционеров, если возникла
серьезная угроза интересам Общества.

9.7. Аудитором Общества может быть гражданин или аудиторская организация,. Аудитор осуществ-
ляет проверки финансово-хозяйственной деятельности в соответствии с законодательством РФ на основа-
нии заключаемого с аудитором договора.

9.8. Аудитор Общества утверждается Общим собранием акционеров.

9.9. По итогам проверки финансово-хозяйственной деятельности Ревизор или аудитор Общества со-
ставляет заключение.

## 10. ИМУЩЕСТВО, УЧЕТ И ОТЧЕТНОСТЬ

10.1. В Обществе создается резервный фонд в размере 5% от уставного капитала Общества, а также
иные фонды по решению общего собрания акционеров. Резервный фонд формируется путем обязательных
ежегодных отчислений в размере 5% от чистой прибыли до достижения установленного размера и может
использоваться лишь в целях, предусмотренных законом.

10.2. Акционер имеет право распорядиться принадлежащими ему акциями в порядке, установленном
действующим законодательством и настоящим Уставом.

10.3. Имущество образуется за счет:
— доходов от реализации продукции, работ, услуг;
— кредитов банков;
— безвозмездных или благотворительных взносов, пожертвований российских и иностранных органи-
заций, предприятий, граждан;
— иных не запрещенных законом поступлений.

10.4. Общество осуществляет учет результатов работ, ведет оперативный, бухгалтерский и статисти-
ческий учет по нормам, действующим в Российской Федерации.

10.5. Организацию документооборота в Обществе осуществляет Генеральный директор. Общество
обязано хранить документы, предусмотренные законом и настоящим Уставом. Общество хранит свои до-
кументы по месту нахождения Генерального директора.

## 11. РАСПРЕДЕЛЕНИЕ ПРИБЫЛИ

11.1. Часть чистой прибыли, подлежащей распределению, распределяется пропорционально количе-
ству акций, которыми владеет акционер.

11.2. Порядок распределения чистой прибыли между акционерами определяется Общим собранием
акционеров.

11.3. Общество вправе по результатам первого квартала, полугодия, девяти месяцев финансового года
и (или) по результатам финансового года принимать решения (объявлять) о выплате дивидендов по разме-
щенным акциям, за исключением случаев, установленных законом.

10

000044



Решение о выплате (объявлении) дивидендов по результатам первого квартала, полугодия и девяти месяцев финансового года может быть принято в течение трех месяцев после окончания соответствующего периода.

11.4. Дивиденды выплачиваются по решению Общего собрания акционеров деньгами, иным имуществом.

## 12. РЕОРГАНИЗАЦИЯ И ЛИКВИДАЦИЯ ОБЩЕСТВА

12.1. Общество может быть добровольно реорганизовано в порядке, предусмотренном законом. Реорганизация Общества может быть осуществлена, в том числе в форме слияния, присоединения, разделения, выделения и преобразования.

12.2. Реорганизуемое Общество после внесения в единый государственный реестр юридических лиц записи о начале процедуры реорганизации дважды с периодичностью один раз в месяц помещает в средствах массовой информации, в которых опубликовываются данные о государственной регистрации юридических лиц, сообщение о своей реорганизации. В случае, если в реорганизации участвуют два и более общества, сообщение о реорганизации опубликовывается от имени всех участвующих в реорганизации обществ обществом, последним принявшим решение о реорганизации либо определенным решением о реорганизации. В случае реорганизации Общества кредиторам предоставляются гарантии, предусмотренные действующим законодательством.

12.3. Общество может быть ликвидировано добровольно либо по решению суда по основаниям, предусмотренным Гражданским кодексом РФ.

12.4. Ликвидация Общества влечет за собой прекращение его деятельности без перехода прав и обязанностей в порядке правопреемства к другим лицам. Ликвидация Общества осуществляется в порядке, установленном Гражданским кодексом РФ, законом, другими нормативными актами, с учетом положений настоящего Устава.

12.5. Вопрос о добровольной ликвидации Общества и назначении ликвидационной комиссии решает Общее собрание акционеров Общества.

12.6. С момента назначения ликвидационной комиссии к ней переходят все полномочия по управлению делами Общества, в том числе по представлению Общества в суде. Все решения ликвидационной комиссии принимаются простым большинством голосов от общего числа членов комиссии. Протоколы заседаний ликвидационной комиссии подписываются Председателем и Секретарем.

12.7. Ликвидационная комиссия помещает в органах печати, в которых публикуются данные о регистрации юридических лиц, сообщение о ликвидации Общества, порядке и сроках для предъявления требований его кредиторами. Срок для предъявления требований кредиторами требования не может быть менее двух месяцев с опубликования сообщения о ликвидации Общества.

12.8. В случае если на момент принятия решения о ликвидации Общество не имеет обязательств перед кредиторами, его имущество распределяется между акционерами Общества в соответствии со ст. 23 Федерального закона «Об акционерных обществах».

12.9. Ликвидационная комиссия принимает меры к выявлению кредиторов и получению дебиторской задолженности, а также в письменной форме уведомляет кредиторов о ликвидации Общества.

12.10. По окончании срока для предъявления требований кредиторами ликвидационная комиссия составляет промежуточный ликвидационный баланс, который содержит сведения о составе имущества Общества, предъявленных кредиторами требованиях, а также результатах их рассмотрения. Промежуточный ликвидационный баланс утверждается Общим собранием акционеров Общества.

12.11. Если имеющихся у Общества денежных средств недостаточно для удовлетворения требований кредиторов, ликвидационная комиссия осуществляет продажу иного имущества Общества с публичных торгов в порядке, установленном для исполнения судебных решений.

12.12. Выплаты кредиторам Общества денежных сумм производятся ликвидационной комиссией в порядке очередности, установленной Гражданским кодексом РФ, в соответствии с промежуточным ликвидационным балансом.

12.13. После завершения расчетов с кредиторами ликвидационная комиссия составляет ликвидационный баланс, который утверждается Общим собранием акционеров Общества.

12.14. Оставшееся после завершения расчетов с кредиторами имущество Общества распределяется ликвидационной комиссией между акционерами Общества в установленном Федеральным законом «Об акционерных обществах» порядке.

12.15. Ликвидация Общества считается завершенной с момента внесения органом государственной регистрации соответствующей записи в Единый государственный реестр юридических лиц.

11

000065

Прошито, пронумеровано
11 (одиннадцать) листов

Заявитель:
Смирнов

Межрайонная инспекция ФНС России №46
по г. Москве

наименование регистрирующего органа
в Единый государственный реестр юридических
лиц внесена запись

7 ДЕК 2015    200_ года
ГРН _____
за № _____

копия документа хранится в регистрирующем
(налоговом) органе

Должность уполномоченного лица
СПЕЦИАЛИСТ 1 РАЗР.

Цветкова Е.В.

000046



**EXHIBIT 3 – FINANCIAL MODEL**

000047

C1

## Сводные данные по Финансовой модели по Федерации

тыс. долл.США

| Наименование | Всего до окончания проекта | в т.ч. | | | | |
|---|---|---|---|---|---|---|
| | | 2013г. | 2014г. | 2015г. | 2016г. | 2017г. |
| **Приходы** | | | | | | |
| Приходы от инвесторов и прочие приходы | 997.919 | 18.294 | 214.870 | 245.938 | 518.817 | 0 |
| Привлеченные заемные средства (Сбербанк) | 216.766 | 75.457 | 140.621 | 687 | 0 | 0 |
| **Итого приходы:** | 1.214.685 | 93.751 | 355.492 | 246.625 | 518.817 | 0 |
| **Расходы** | | | | | | |
| Строительные расходы | 427.345 | 93.157 | 259.907 | 74.146 | 135 | 0 |
| Прочие расходы (кред. зад-сть, реклама, налоги, страхование отв-сти управляющего) | 170.699 | 26.847 | 23.261 | 64.809 | 0 | 14.529 |
| Погашение кредита Сбербанка + оплата процентов по кредиту | 407.936 | -8.957 | 114.906 | 99.271 | 59.711 | 125.091 |
| **Итого расходы:** | 1.005.980 | 132.497 | 414.874 | 252.560 | 66.428 | 139.620 |
| **Всего (Приходы - Расходы)** | 208.705 | -38.746 | -59.383 | -5.936 | 452.389 | -139.620 |

N.H. Railer

S.I. Rep

000048

000049



000050



000051



000052

C1

000053

C1

000054

Счет

| Контрагенты | Сальдо на конец периода (на 23.08.15) | | Включена/не включена задолженность в Фин. модель | Примечание |
|---|---|---|---|---|
| | Дебет | Кредит | | |
| ВСК-Электро | 40.169.480,61 | | Не включена | Вероятно будет погашаться выполненными работами |
| Вымпелком | 4.826,35 | | Не включена | |
| ГазНПроекс | 211.500,00 | | Не включена | |
| Гидроспецкой | 5.730.892,54 | | Не включена | |
| ГлавСтройГрупп ООО | 3.468.602,40 | | Не включена | |
| Геологическая строительная комп. | 16.563.838,41 | | Не включена | Будет погашаться выполненными работами |
| ГОРЭНЕРГОСЕРВИС ИТЦ, ООО | 1.712.946,44 | | Не включена | Прошёл срок исковой давности |
| Группа Компаний ЩИТ | 454.480,00 | | Не включена | Имеется встречная кред. зад-сть |
| ГОЛИ ОАО | 1.167.765,76 | | Не включена | |
| Движение Строй | 850.000,00 | | Не включена | Будет погашаться выполненными работами |
| ДизельСиб | 578,44 | | Не включена | |
| ИНТКом ООО | 156.019,60 | | Не включена | |
| Евро Дизайн Маркет | 1.269.422,69 | | Не включена | |
| Индустрия-Контрашин ООО | 840.450,00 | | Не включена | Внутрихозоперативная зад-сть |
| ИНЖТЕХСТРАН ЗАО ИКЦ | 371.700,00 | | Не включена | |
| Инвенции и Инноватекс | 2.013.000,00 | | Не включена | |
| ИП Хлыстов А.П. | 17.820,00 | | Не включена | |
| Комтраст, ООО | 1.043.368,00 | | Не включена | Имеется встречная кред. зад-сть |
| ИС-н КО, ООО | 8.310.657,22 | | Не включена | Имеется встречная кред. зад-сть |
| Лимфизот-Сервис, ООО | 2.959.657,29 | | Не включена | |
| Лизал-СТ ООО Москва | 1.788.664,55 | | Не включена | Имеется встречная кред. зад-сть |
| ЛИТ-ГД | 58.547,50 | | Не включена | |
| Майдан-01 | 230.027,80 | | Не включена | |
| ЛюМикс Моско | 3.041.571,00 | | Не включена | Имеется встречная кред. зад-сть |
| Мир высотных зданий, ООО | 112.530.412,16 | | Не включена | Имеется встречная кред. зад-сть, будет погашаться выполненными работами |
| МИХТЕХ | 20.100,00 | | Не включена | |
| Монолит-Спецстрой | 8.800.000,00 | | Не включена | Будет погашаться выполненными работами |
| Мосавтодорстрой Управление | 307.361,16 | | Не включена | |
| Мосстройпроект ГУП | 20.254,70 | | Не включена | |
| Моспроект | 1.220.828,74 | | Не включена | |
| Моспроект-2 им. М.В.Посохина | 431.800,49 | | Не включена | |
| Мосстрой ГУП | 5.474,94 | | Не включена | |
| МосЭнергоСтрой, ООО | 137.301.479,30 | | Не включена | |
| МОЭК ОАО | 12.231.544,60 | | Не включена | Будет погашаться выполненными работами |
| НВ Балтийский Альянс | -36.690,95 | | Не включена | |
| НПО-РААСН п/с 20736133040 | 8.308.863,19 | | Не включена | Будет погашаться выполненными работами |
| НОУ ВПО МИЭЗ | -54.460,00 | | Не включена | Будет погашаться выполненными работами |
| НТЦ Пожарная безопасность | 12.000,00 | | Не включена | Будет погашаться выполненными работами |
| Особь, ООО | 600.000,00 | | Не включена | Будет погашаться выполненными работами |
| ОХРАННО-ПОЖАРНАЯ БЕЗОПАСНОСТЬ | 14.261.095,48 | | Не включена | Будет погашаться выполненными работами |
| ПЕГЛЕР РУС | 5.282.064,46 | | Не включена | Будет погашаться выполненными работами |
| ПКИпромстрой | 4.117.370,00 | | Не включена | Прошёл срок исковой давности |
| ПГУЗ "Алексей Колубков" | 15.000,00 | | Не включена | |
| Проект Здание АК ЗАО | 31.500.000,00 | | Не включена | Есть решение суда в пользу Подрядчика |
| Проекс-НТЦ | 42.600,00 | | Не включена | |
| Проектное бюро "Римас", ООО | 454.502,35 | | Не включена | |
| Проектный ПКТИ ОАО | 17.711.804,43 | | Не включена | Будет погашаться выполненными работами |
| Профто-строй | 175.000,00 | | Не включена | |
| Пфлафри ООО | 263.374,05 | | Не включена | Будет погашаться выполненными работами |
| РТВ МВА | 63.603.509,68 | | Не включена | Имеется встречная кред. зад-сть, прошёл срок исковой давности |
| Рутаймейстер-Рус | 1.764.518,00 | | Не включена | |
| САЛДО мм | 219.551,00 | | Не включена | |
| АМ Строй Тех - сервис, ООО | 2.805.000,00 | | Не включена | |
| РИМАКС ПРОЕКТ, ООО | 84.900,00 | | Не включена | |
| Техмонтажкомплекс | 264.850,00 | | Не включена | Имеются встречные кред. зад-сть |
| | 425.327,37 | | Не включена | Будет погашаться выполненными работами |
| ЕАЛО (1714173474) | 14.250,12 | | Не включена | |
| | 11.864.860,14 | | Не включена | Имеется встречная кред. зад-сть |
| СБЕАП (7723783116) | 3.618.500,00 | | Не включена | Имеется встречная кред. зад-сть |
| ПП ОАО | -3.658.927,91 | | Не включена | |
| Трафлюр, ООО | -169.000,00 | | Не включена | |
| Стройэнерго ИК | 1.820.205,46 | | Не включена | |
| СтройТК | 840,34 | | Не включена | |
| СтройСервис, ООО | 23.420,00 | | Не включена | |
| ТД | 14.285.965,68 | | Не включена | |
| Энергоскатком | 66.000,00 | | Не включена | Будет погашаться выполненными работами |
| Стил ТД | 178.856,28 | | Не включена | |

000057

| Счет | Сальдо на конец периода (на 23.09.13) | | Включение/ не включена задолженности в фин. модель | Примечание |
|---|---|---|---|---|
| | Дебет | Кредит | | |
| Контрагенты | 10.307.961,83 | | | |
| Стальконтакт | | | Не включена | Прошёл срок исковой давности |
| СтройБилдИзол п | 1.468.511,61 | | Не включена | |
| СтройМастер, ООО | 55.076.733,51 | | Не включена | Будет погашена выполненными работами |
| Стройинтехсервис, ООО | 3.201.047,00 | | Не включена | |
| СтройМонтажПроектно 321 | 222.284,45 | | Не включена | |
| Тексллм ООО | 24.040,00 | | Не включена | |
| ТД ЕВРОМО ТЕЛЕКОМ | 15.000,00 | | Не включена | |
| Темп.ру | 899.462,92 | | Не включена | |
| Технологические Системы | 136.950,00 | | Не включена | |
| Техноресурс | 4.500.000,00 | | Не включена | |
| ТиссенКрупп Элеватор, ООО | 37.440,00 | | Не включена | |
| ТОРЭКС | 337.282,60 | | Не включена | |
| Трал-Сервис | 1.660,00 | | Не включена | |
| УИН Техника ЗАО | 782.876,91 | | Не включена | |
| Фирма СтройСофт | 39.250,00 | | Не включена | |
| Фортис.Ру ООО | -11.040,00 | | Не включена | |
| Хитрейд | 43.860,00 | | Не включена | |
| ХОЛДИНГ-СТРОЙСТАЛЬ, ООО | 1.760.932,02 | | Не включена | Будет погашена выполненными работами |
| Центр ОПСН, ООО | 25.006.436,53 | | | |
| Центр Подшипник-Контракт | 7.676,80 | | Не включена | |
| Центр-Сити, ГУП, Москва | 305.413,85 | | Не включена | Будет погашена выполненными работами |
| ЦНИИЗП кольцо ОАО | 720.000,00 | | Не включена | |
| Частная Мэр | 70.097,60 | | Не включена | Прошёл срок исковой давности |
| Шиндлер, ЗАО | 174.000,00 | | Не включена | |
| ЭкоПромИндустрия | 127.406,69 | | Не включена | Имеется встречная зад-сть |
| Энергосвязьмонтаж, ООО | 2.222.612,00 | | Не включена | |
| Энергетехмонтаж 2000 | 2.531.800,00 | | Не включена | |
| Эфлакс | 424.000,00 | | Не включена | |
| Эч'А Эк | 662.960,20 | | Не включена | Прошёл срок исковой давности |
| ЯРАМАКС сервис | 745.500,00 | | Не включена | |
| 60.04 (Расчеты с подрядчиками, гарантийное удержание) | 0,00 | 65.784.076,58 | Включена | Имеется встречная зад-сть |
| Ан-Видео, ООО | | 906.583,59 | Включена | |
| АККЕМ, ООО | | 513.867,23 | Включена | Имеется встречная зад-сть |
| Альсика, ООО | | 7.800,00 | Включена | Имеется встречная зад-сть |
| АМК Групп, ООО | | 9.044.467,26 | Включена | Имеется встречная зад-сть |
| Арстек Инжиниринг | | 871.083,07 | Включена | Имеется встречная зад-сть |
| Вох, | | 34.904,82 | Включена | Имеется встречная зад-сть |
| ВИТЮР, ЗАО | | 33.718,00 | Включена | Имеется встречная зад-сть |
| Возрождение, ООО | | 89.638,69 | Включена | Не включена |
| Гидроспецстрой | | 420.174,55 | Не включена | Прошёл срок давности |
| ГлавСтройГрупп ООО | | 627.431,46 | Включена | Имеется встречная зад-сть |
| Геологечная строит-ичной комп | | 2.238.100,92 | Не включена | Прошёл срок давности |
| Группа БОР, ООО | | 28.821,63 | Включена | |
| Дизмаркет Строй | | 28.264,63 | Не включена | Прошёл срок давности |
| Инжстрой-Сити Монолит | | 1.556.397,91 | Не включена | Прошёл срок давности |
| Инжстройсервис | | 176.288,00 | Включена | |
| Интеовинторм, НПП ООО | | 272.665,46 | Включена | |
| Контрфакс, ООО | | 15.644,84 | Включена | Частично |
| КС и КО, ООО | | 1.191.551,14 | Включена | |
| Ландшафт Сервис, ООО | | 2.496.726,78 | Не включена | Имеется встречная зад-сть |
| Монолит СтройПроект, ООО | | 75.000,00 | Не включена | Имеется встречная зад-сть |
| МосЭнергоСтрой, ООО | | 1.824.672,19 | Не включена | Имеется встречная зад-сть |
| Обнало, ООО | | 122.082,91 | Включена | |
| Организация Строит Технологий | | 291.845,60 | Не включена | Прошёл срок давности |
| Прогресс НТЦ | | 41.938,62 | Не включена | Прошёл срок давности |
| ПСП-Фарман ООО | | 48.148.744,61 | Включена | |
| СВЕАПП (7714178474) | | 4.085.816,22 | Не включена | Имеется встречная зад-сть |
| СВЕАПП (7723783116) | | 201.750,60 | Не включена | Имеется встречная зад-сть |
| Очистрой, ООО | | 351.813,76 | Включена | |
| СитиЭнерго ЗК | | 461.639,89 | Включена | |
| СРУ 110, ООО | | 476.440,10 | Включена | |
| Спецавтотрой, ООО | | 1.401.132,26 | Не включена | Прошёл срок давности |
| Строй-Дон | | 300.529,19 | Включена | |
| СтройИнжПроект | | 2.064.210,16 | Не включена | Имеется встречная зад-сть |
| СтройМастер, ООО | | 2.342.130,31 | Не включена | Имеется встречная зад-сть |
| СтройМонтажСервис ООО | | 24.359,76 | Не включена | Имеется встречная зад-сть |
| СтройГлавизол, ООО | | 235.789,60 | Включена | 0058 |
| Технологические Системы | | 35.275,00 | Включена | |

**...ская Федерация"**

Дебиторская и кредиторская задолженность по проекту.Федерация (на 23.09.13) (в руб.)

| | Сальдо на конец периода (на 23.09.13) | | Включена/не включена задолженность в Фин. модель | Примечание |
|---|---|---|---|---|
| | Дебет | Кредит | | |
| ...нные вложения) | 853.473.677,24 | 0,00 | | |
| ...из (предоставленные займы) | 853.473.677,24 | 0,00 | | |
| ...го Investments Limited | 853.473.677,24 | | Не включена | |
| ...ские строит.технологии ООО | 20.000.000,00 | | Не включена | Внутрикорпоративная зад-сть |
| ...Расчеты с поставщиками и подрядчиками | 2.219.841.680,86 | 824.911.516,12 | | |
| ...Расчеты с поставщиками и подрядчиками | 0,00 | 283.760.034,63 | | |
| ...БУГАЛСО | | 50.000,00 | Не включена | Имеется встречная деб. зад-сть |
| ...опроводчик № 1 | | 40.000,00 | Включена | |
| ...Альянс, ООО | | 407.495,70 | Включена | |
| ...АХЭМ, ООО | | 605.240,08 | Включена | |
| ...КСИОМ, ООО | | 127.500,00 | Не включена | Имеется встречная деб. зад-сть |
| ...СТАЛЕРО | | 265.382,33 | Не включена | |
| ...ЛМК Групп, ООО | | 7.681.208,16 | Включена | |
| ...ланс Групп | | 17.973,00 | Не включена | |
| ...ОЛМАХ | | 7.755,00 | Не включена | |
| ...Р-ОФИОН ЗАО | | 20.761.133,16 | Включена | |
| ...РИО-ГРУПП, ЗАО | | 119.665,50 | Не включена | Имеется встречная деб. зад-сть |
| ...итек Инжиниринг | | 1.626.426,86 | Включена | |
| ...А-Завод, ООО | | 763.389,00 | Не включена | |
| ...ммуникационные технологии | | 1.569.157,53 | Включена | Частично |
| ...Торг | | 654,00 | Не включена | |
| ...Федерация менеджмент ДУ | | 1.549.135,74 | Не включена | Внутрикорпоративная зад-сть |
| ...ний Собор | | 113.376,55 | Не включена | |
| ...ОН ЗАО | | 25.726,62 | Не включена | |
| ...онс.Оптима | | 87.794,80 | Не включена | Прошёл срок исковой давности |
| ...ИТ ООО | | 12.000,00 | Включена | |
| ...КЛАСС | | 1.777.400,00 | Не включена | Имеется встречная деб. зад-сть |
| ...калосс Про | | 520.000,00 | Не включена | |
| ...вертикаль | | 3.455.170,68 | Включена | Частично |
| ...ИНТОР, ЗАО | | 7.362,05 | Включена | |
| ...ЗлийКом | | 1.990.000,00 | Включена | |
| ...льянс Ком | | 2.058,07 | Не включена | |
| ...Гарант-Логистик ООО | | 1.617.202,02 | Включена | Внутрикорпоративная зад-сть |
| ...ГлавСтройГрупп ООО | | 3.467.073,86 | Включена | |
| ...Смоленская строит-ниноч комп | | 13.828.077,10 | Не включена | Прошёл срок исковой давности |
| ...ЭНЕРГОСЕРВИС ИТЦ, ООО | | 14.631.622,26 | Включена | |
| ...ГЛТИ-ОАО | | 1.585.635,27 | Включена | |
| ...НУТ Москпроект-М и инфиниция | | 10.841,10 | Включена | |
| ...нвира Строй | | 414.640,44 | Не включена | Прошёл срок исковой давности |
| ...Диалон ООО | | 5.200.000,00 | Включена | |
| ...ИЛС | | 840.354,00 | Включена | |
| ... | | 89.959,90 | Включена | |
| ...Автоситех | | 3.321.648,90 | Не включена | Прошёл срок исковой давности |
| ...ниал КапиталГрупп ООО | | 912.865,65 | Не включена | |
| ...СТРОЙСЕРВИС | | 212.106,81 | Включена | |
| ...нновации и Интеллект | | 316.000,00 | Включена | |
| ...нтерпромстрой-М, НПП ООО | | 377.843,91 | Включена | |
| ...Л Сервис Н.Л. | | 0,10 | Не включена | |
| ...Компания СИМПЛ | | 91.149,16 | Не включена | |
| ...консалтАвто, ООО | | 396.584,40 | Включена | |
| ...Контракт ООО | | 2.086.091,00 | Не включена | Имеется встречная деб. зад-сть |
| ...Коронация вода ООО | | 1.853,16 | Включена | |
| ...КСИ и КО, ООО | | 4.837.209,20 | Включена | Частично, имеется встречная деб. зад-сть |
| ...Локо Медиа | | 1.195.380,00 | Включена | |
| ...Лендшафт Сервис, ООО | | 971.410,05 | Не включена | Имеется встречная деб. зад-сть |
| ...Проект СТ ООО Москва | | 1.766.654,56 | Не включена | Имеется встречная деб. зад-сть |
| ...МТ ТД | | 58.542,00 | Не включена | |
| ...Мастер-С ЧОП ООО | | 6.902.985,00 | Не включена | |
| ...Мебель Магол | | 2.000.934,76 | Не включена | Имеется встречная деб. зад-сть |
| ...Мебель-Холл | | 2.198.876,20 | Не включена | Прошёл срок исковой давности |
| ...Медиа-М | | 8.660.837,90 | Не включена | Прошёл срок исковой давности |
| ...Мир высотных зданий, ООО | | 8.208.861,12 | Включена | Внутрикорпоративная зад-сть |
| ...МонолитСтройПроект, ООО | | 350.000,00 | Включена | |
| ...Мосводосто ГУП | | 27.013,63 | Включена | |
| ...МосгорБТИ ГУП | | 292.718,21 | Не включена | Прошёл срок исковой давности |
| ...Московская Инжинири. Компания | | 270.616,44 | Не включена | Внутрикорпоративная зад-сть |
| ...Мосэлектро ГУП | | 177.826,05 | Включена | |
| ...МТС | | 91.709,33 | Не включена | |
| ...Мясницкая РУ ООО | | 155.935,00 | Не включена | |
| ...НИФОС - РААСН пс 20739.36940 | | 1.448.076,00 | Включена | |
| ...Новая Управляющая компания | | 480.287,66 | Не включена | Внутрикорпоративная зад-сть |
| ...Обшуно, ООО | | 2.143.620,77 | Включена | 000055 |

| Счет | Дебет | Кредит | Сальдо на конец периода (на 23.09.13) | Включение задолженность в фин. модель | Прибавл. |
|---|---|---|---|---|---|
| | | 1.380.000,00 | | Не включена | Пропал срок иск. давности |
| Контрагенты | | | | | |
| Оверенс Спа ООО | | 1.151.061,37 | | Не включена | Пропал срок иск. давности |
| Организация Строит Технолог | | 15.886,79 | | Не включена | |
| | | 872.512,33 | | Не включена | |
| Офис Дом Москва | | 1.452.682,63 | | Не включена | |
| ОХРАННО-ПОЖАРНАЯ БЕЗОПАСНОСТЬ | | 3.048.113,19 | | На включено | |
| Пенеро Конетракшн | | 1.047.000,00 | | Не включена | |
| Пойн Зудавс  Сан-т Петербур | | 1.904.347,84 | | Включена | |
| Пройи Зудавс АИГ ЗАО | | 199.200,00 | | Не включена | |
| Предприятие  Мастер Бетон | | 7.657,60 | | Включена | |
| Предприятие БЕРИКС | | 1.465.067,05 | | Не включена | |
| Просрочео НТЦ | | 100.000,00 | | Не включена | |
| Проектное бюро "Рилокс", ООО | | 75.000,00 | | Включена | Частично |
| Промстрой ГКПИ ОАО | | 1.784.616,00 | | Не включена | |
| ПромТех Спецмонтаж | | 51.960,00 | | Не включена | |
| ПТФ МВА | | 85.000,00 | | Включена | |
| Региональная произв/компания | | 1.734.012,60 | | Не включена | |
| Резвания служба АВБ | | 1.148.698,57 | | Не включена | Внутрикорпоративно сть |
| Рен Строй Тех - сервис, ООО | | | | | |
| РИМАКС ПРОЕКТ, ООО | | 75.000,00 | | Не включена | |
| | | 65.100,00 | | Включена | |
| РМС Про | | 104.947,60 | | Не включена | Имеется встречн. зад-сть. |
| Рохмгинут, ООО | | 16.093.355,96 | | Не включена | Имеется встречн. зад-сть. |
| РСТ -сервис, ООО | | | | | |
| СВЕАЛЛ (7714173474) | | 250.800,00 | | Не включена | Частично |
| | | 5.934.431,24 | | Включена | Частично |
| | | 2.051.172,09 | | Включена | |
| СИТИ ОАО | | 185.000,00 | | Не включена | |
| СитиСтрой, ООО | | 640,34 | | Не включена | |
| Софейлалы Трейд | | 1.985.610,80 | | Не включена | |
| Спектр ТК | | 23.420,00 | | Включена | |
| Спецмонтаж | | 5.404.733,71 | | Не включена | |
| СпецГенсервис, ООО | | 327.225,74 | | Включена | |
| РТКН, ООО | | 322.180,38 | | Не включена | Пропал срок иск. давности |
| ССУ 110, ООО | | | | | Пропал срок иск. давности |
| Стальмонтаж | | 15.975.727,00 | | | |
| Стандартстрой, ООО | | 140.000,00 | | Включена | |
| | | 3.771.960,10 | | Включена | |
| Строительство НИЦ ФГУП | | 3.233.061,07 | | Не включена | Имеется встреч. зад-сть. |
| Строй-Дом | | | | | |
| СтройМастер, ООО | | 1.403.225,78 | | Не включена | |
| | | 6.201.174,92 | | Включена | |
| СтройМонтаж-Сервис ООО | | 750.000,00 | | Не включена | |
| СтройТехИнвест, ООО | | 376.220,16 | | Не включена | |
| СтройПромРеал, ООО | | 91.606,67 | | Не включена | |
| Теле.ру | | 922.297,60 | | Включена | |
| Теплостройсервис | | 1.680,00 | | Не включена | Пропал срок давности |
| ТОЕЭКС | | 4.280.115,43 | | Не включена | |
| Трейд-Сервис | | | | | |
| Трансколлект ЗАО Филиал № 3 | | 60.794,41 | | Включена | |
| | | 232.508,42 | | Включена | |
| Триада СН, ООО | | 590.424,74 | | Включена | |
| Триада Холдинг | | 342.694,75 | | Не включена | Внутрикорпоративно сть |
| УВН Техника ЗАО | | | | | |
| УК Поток Бесконечность | | 33.725,71 | | Включена | |
| | | 38.360,00 | | Не включена | |
| Укринжпроектстальмонтажная | | 2.673.518,00 | | Не включена | Пропал срок давности |
| фирма СтройСофт | | | | | |
| Флоэт-Про | | 2.319.936,70 | | Включена | |
| | | 310.458,00 | | Не включена | |
| ХОЛДИНГ-СТРОЙСТАЛЬ, ООО | | 51.800,00 | | Включена | |
| Центр евергии ЗАО инф. ООО | | 383.093,74 | | Включена | |
| ЦЕНТР ТЯЖЕСТИ, ООО | | 35.427.427,66 | | Не включена | Пропал срок давности |
| Центр-Сити, ГУП г. Москвы | | 80.000,00 | | Не включена | |
| Центральная Энергетическая дом | | | | | |
| Щетанюк Татьяна Владимировна | | 127.406,69 | | Не включена | |
| | | 0,01 | | Не включена | Внутрикорпоративно сть |
| ЭкоГеоИндустрия", ООО | | 20.771.129,49 | | Не включена | |
| Эксплоаш Строй ПСК | | | | | Частично, имеется встречная деб |
| Эксплуатация высотных зданий | | 660.328,70 | | Включена | |
| Энергогазспецмонтаж, ООО | | 45.000,00 | | Не включена | |
| | | 0,00 | | | |
| Энергострой-нн | 624.053.342,78 | | | Не включена | Имеется встреч. зад-сть, будет выполнено |
| 60.02 (Расчеты по авансам выданным) | | 4.482.198,81 | | Не включена | Будет выполнено |
| Ан-Видэо, ООО | | | | Не включена | Будет выполнено |
| | | 51.046.569,33 | | Не включена | |
| Алпика, ООО | | 270.227,57 | | Не включена | Имеется встр. зад-сть. |
| | | 80.722.926,16 | | Не включена | |
| АЛЬФАСТРАХОВАНИЕ | | | | | |
| АМК Групп, ООО | | 7.917,00 | | Не включена | |
| | | 18.000,00 | | Не включена | |
| АлКапитал, ООО | | 7.755,00 | | Не включена | Имеется встр. зад-сть. |
| АНТО КРЕО | | 2.186.283,09 | | Включена | |
| АПЕКС ТП | | | | | |
| АРМО-ГРУПП, ЗАО | | 226.950,00 | | Не включена | |
| | | 440.500,00 | | Не включена | |
| Арсенал | | 920.000,00 | | Не включена | |
| Век, ООО | | 28.579,20 | | Не включена | Будет выполнено |
| Вефорт, ООО | | 687.462,10 | | | |
| ВЕСТИНА-медиа | | | | Не включена | |
| ВИГ ПОИНТ | | 4.405.800,00 | | Не включена | |
| ВИППАРД Групп | | 835.834,00 | | Не включена | |
| ВИТОР, ЗАО | | 5.638.648,00 | | Включена | |
| Водоохдонив, ООО | | | | | |

C1

| Контрагенты | Сальдо на конец периода (на 23.09.13) | | Включение / включена задолженность в фин. модель | Примечание |
|---|---|---|---|---|
| | Дебет | Кредит | | |
| Трейд СК, ООО | | 553.457,09 | Включена | |
| Элеко-Про | | 203.128,00 | Не включена | |
| ХОЛДИНГ-СТРОЙСТАЛЬ, ООО | | 1.462.857,47 | Включена | |
| Центр ОПСК, ООО | | 681.069,00 | Включена | |
| Волжская Стекол ПСК | | 68.516,30 | Не включена | |
| Энергогазинжиниринг, ООО | | 6.477,10 | Не включена | |
| Энергетехоснастка 2000 | | 77.666,00 | Не включена | |
| 60.21 (Расчеты с поставщиками и подрядчиками (в валюте)) | 0,00 | 147.162.219,60 | | |
| K-Desating Ink. | | 2.411.008,36 | Не включена | Прошёл срок исковой давности |
| LOVENS LOEFF N.V. | | 127.439,79 | Не включена | |
| Бауэлинг Гибх Мюнхен | | 4.743.600,33 | Не включена | Прошёл срок исковой давности |
| Вагин федерация в Москве, Герм | | 1.340.156,00 | Включена | |
| Беккер Интернешнл ВПК | | 33.851.831,89 | Включена | |
| Тиссенкрупп Ауфцугсверке ГмбХ | | 68.262.654,73 | Включена | |
| Тренсон Товаэтти Груп | | 3.833.273,18 | Включена | |
| Трентон Товаэтти, дог. 005 | | 1.421.128,63 | Не включена | Прошёл срок исковой давности |
| Якутуголь,берг | | 11.151.149,70 | Не включена | Прошёл срок исковой давности |
| 60.22 (Расчеты по авансам выданным в валюте) | 45.686.539,42 | 0,00 | | |
| U-BAHN-GESELLSCHAFT DORTMUND M... | 1.800.942,70 | | Не включена | Прошёл срок исковой давности |
| JAMES ROBERTSON ART CONSULTANT | 30.607.480,97 | | Не включена | Прошёл срок исковой давности |
| K-K Desating Ink. | 446.406,76 | | Не включена | Прошёл срок исковой давности |
| Вагин Федерация в Москве, Герм | 321.744,69 | | Не включена | Имеется встречн.кред. задолж. |
| ООО Трейдинг, ООО | 264.763,21 | | Не включена | Будет погашаться выполнением работами |
| Тиссенкрупп Ауфцугсверке ГмбХ | 1.716.100,61 | | Не включена | Имеется встречн.кред. задолж. |
| Хайнт | 2.765.915,70 | | Не включена | Прошёл срок исковой давности |
| Якутуголь,берг | 7.676.164,50 | | Не включена | Прошёл срок исковой давности |
| 60.01 (Расчеты с поставщиками и подрядчиками (в у.е.)) | 0,00 | 300.224.288,61 | | |
| АРМО-ГРУП, ЗАО | | 12.181.661,68 | Не включена | Имеется встречная деб. задолж. |
| БАХНСТОН | | 5.205.193,89 | Не включена | |
| БЕФОН | | 51.034,28 | Не включена | |
| Буэл Ильпиенс | | 105.410.561,76 | Не включена | Имеется встречная деб. задолж. |
| Вишбокс | | 8,36 | Не включена | |
| Келлик, ООО (Кобленц и Партнер) | | 48.285.523,52 | Не включена | Частично |
| Крокус | | 40.337.013,01 | Не включена | Имеется встречная деб. задолж. |
| Этэлобокс | | | | |
| Елло Лифт Сервис ЗАО | | 18.296,07 | Не включена | |
| Дивецкий Афанасьев и П | | 216.629,93 | Не включена | |
| Интравит ООО | | 1.114.641,76 | Не включена | |
| Калинос Судоспэсор Геннадьевич | | 3.324,74 | Не включена | |
| Коллинвуд | | 860.256,00 | Не включена | Прошёл срок исковой давности |
| Мудрых Требл | | 183,00 | Не включена | |
| Черепков Ю.Д. | | 137.061,45 | Не включена | |
| ПР-ТРАНСЭКСПО ООО | | 390.531,91 | Не включена | Прошёл срок исковой давности |
| Энергоинжпроект | | 1.169,87 | Включена | |
| Лосмфокрус Элемэтон, ООО | | 4.750.650,28 | Не включена | |
| Торгтэн -Товаэтти Груп | | 9.672.090,61 | Не включена | |
| Штуллир, ЗАО | | 902.334,44 | Включена | |
| Сорт Интернэшнл ГмбХ & Ко.Кг | | 1.376.714,90 | Не включена | Имеется встречная деб. задолж. |
| Эллм Имсиал ве Санаки Аноним Ширкети | | 3.079.385,74 | Не включена | Прошёл срок исковой давности |
| | | 8.016.033,69 | Не включена | Имеется встречная деб. задолж. |
| Линда Фэкси ООО | | 66.272.656,60 | Включена | |
| 60.02 (Расчеты по авансам выданным (в у.е.)) | 1.350.091.786,73 | 0,00 | | |
| АРМО-ГРУП, ЗАО | 4.735.090,97 | | Не включена | Имеется встречн.кред. задолж. |
| Бизнес-Право | 1.781.605,30 | | Не включена | Прошёл срок исковой давности |
| Буэл Ильпиенс | 351.372.359,18 | | Не включена | Имеется встречная деб. задолж. Окл.в Лондоне |
| Вэст Инфра | 1.645.392,05 | | Не включена | Прошёл срок исковой давности |
| ЛЕО СПЕКТРУМ | 13.509.187,94 | | Не включена | Будет погашаться выполнением работами |
| | 46.776.076,65 | | Не включена | Прошёл срок исковой давности |
| Авторлогик Сервис ЗАО | 183.120,49 | | Не включена | |
| Инновационный центр | 54.776.860,94 | | Не включена | |
| Координатор Оффшор Рос.Авиак | 4.024.290,00 | | Не включена | |
| МэйлкоХоли | 218.507,41 | | Не включена | |
| ООК Трейдинг ООО | 3.215.516,66 | | Не включена | |
| ПР-ТРАНСЭКСПО ООО | 309.693,00 | | Не включена | |
| Триангл энергия | 35.506.840,36 | | Не включена | |
| Тихоокеанский элеватор, ООО | 2.314.225,21 | | Не включена | Будет погашаться выполнением работами |
| Торгтэн -Товаэтти Груп | 6.876.325,31 | | | Будет погашаться выполнением работами |
| Штуллир, ЗАО | 270.244.741,72 | | Не включена | Будет погашаться выполнением работами |

S.I. Rep
NH: Raghe

000059

| Счет | Сальдо на конец периода (на 23.09.13) | | Включена/не включена задолженность в Фин. | Примечание |
|---|---|---|---|---|
| | Дебет | Кредит | | |
| Контрагенты: | 104.840.181,93 | | Не включена | Имеется встреч. зад-сть, будет выставляться пре по возврату ав. |
| Элкэ Иншаат ве Санайк Аноним Ширкети | | | | |
| | | | | |
| Ювида Фасад ООО | 328.950.847,01 | | Не включена | Будет погашая взаимными ра... |
| | | | | |
| | 479.362.859,20 | 19.250.173,42 | | |
| 62 (Расчеты с покупателями и заказчиками) | 374.220.119,33 | 0,00 | | |
| 62.01 (Расчеты с покупателями и заказчиками) | 6.401.494,88 | | Не включена | Прошёл срок давности |
| AVANCE INVEST LTD | | | | |
| | 58.301,44 | | Не включена | Прошёл срок давности |
| BESCLAVO TRADING LTD | | | | |
| | 2.246.019,06 | | Не включена | Прошёл срок давности |
| BOGAZICI GAYRIMENKUL | | | | |
| CYPEARL MANAGEMENT LIMITED | 1.082.168,30 | | Не включена | Прошёл срок давности |
| Divino Profxto Limited | 5.054.256,30 | | | |
| | | | Не включена | |
| Gokd Trading Limited | 1.692.255,57 | | Не включена | |
| LAKE HOLDINGS & FINANCE S.A. | 2.798.995,16 | | Не включена | |
| Turkogianzkwsai Limited | 38.301,44 | | Не включена | |
| АБ "Твшмент" ОАО | 319.920,65 | | Не включена | |
| АВАНТА ООО | 1.106.250,00 | | Не включена | Прошёл срок на давности |
| Адабшян Арменуя Эдиковна | 314.597,07 | | Не включена | Прошёл срок на давности |
| | | | | |
| Адамян Заик Ноонкович | 635.316,77 | | Не включена | |
| | | | | |
| | 2.258,00 | | Не включена | |
| АКБ "ЕВРОФИНАНС МОСНАРБАНК" | 241.482,62 | | Не включена | |
| Алаян А.А. | 148.500,00 | | Включена | Прошёл срок давности |
| Акаэли Тур | 3.725.908,50 | | Не включена | Имеется встреч зад-сть. |
| АНФОРД | | | | |
| | 4.308.594,98 | | Не включена | |
| АРМО-ГРУПП, ЗАО | | | | Имеется встре зад-сть. |
| | 871.085,00 | | Не включена | |
| Арстек Инжинвфинг | | | | Имеется встреч зад-сть. |
| | 1.668.167,59 | | Не включена | |
| Архитектурные традиции | | | | Прошёл срок давности |
| Асожкиви Инвест Лимитед | 1.491.108,52 | | Не включена | |
| | | | | |
| Агор Лимитед | 79.029,11 | | Не включена | |
| Беклнкова Валентина Олеговна Н | 0,01 | | Не включена | |
| Банк ВТБ 24 (ЗАО) | 55.000,00 | | Не включена | Прошёл срок давности |
| БАРС | 1.070.077,12 | | Не включена | |
| | | | | |
| Башня Федерация и Москва, Терм | 911.180,67 | | Не включена | |
| Башня Федерация менеджмент | 591.267,85 | | Не включена | |
| БИЛЛИНВЕСТ ООО | 283.204,17 | | Не включена | |
| Буки Инпальти | 915.561,43 | | Не включена | |
| Бэст-Персонал.Компания ООО | 73.142,30 | | Не включена | |
| Бес.ООО | 10.720,00 | | Не включена | Прошёл срок давности |
| ВентСфид Зетайт | 2.248.107,99 | | Не включена | Прошёл срок давности |
| | | | | |
| Виа Либера | 395.299,49 | | Не включена | |
| | | | | |
| ВИКС | 136.301,60 | | Не включена | |
| Виишторбанк ОАО | 164.581,65 | | Не включена | |
| ГАЛЕАС Фирма ООО | 96.520,80 | | Не включена | |
| Гаевстрой ООО | 52.888,63 | | Не включена | |
| Гама. ООО (Ковоеви и Партнер) | 27.757.950,61 | | Не включена | |
| Гидроснлсетрой | 474.500,44 | | Не включена | |
| ГидроЭнергоПроект 5003051441 | 68.345,85 | | Не включена | |
| Глвстрой групп ООО | 137.638,29 | | Не включена | |
| Глмсоргсая строит-ижен комп | 2.055.035,67 | | Не включена | |
| Город-Банка ООО | 301.780,00 | | Не включена | |
| Грва строй ООО | 1.966.040,96 | | Не включена | |
| Гумкова В. А. | 2.604.292,04 | | Не включена | Прошёл срок давности |
| | | | | |
| Еврокомпл | 55.168,92 | | Не включена | |
| Жилкцалистика ООО | 888.719,85 | | Не включена | |
| ЖИЛИЩЕ НПГ | 584.860,42 | | Включена | |
| ЖСК "Рублоновская Слобода" | 13.276,00 | | Не включена | |
| ЗЕНИТ, ОАО | 150.000,00 | | Не включена | Прошёл срок давности |
| Энкео В.Г. | 3.726.568,25 | | Не включена | |
| | | | | |
| ЗЕОН | 13.526,52 | | Не включена | |
| Инвест-Теад.(Мариет ред) окт11 | 13.274,96 | | Не включена | |
| ИНВЕСТДОМ | 64.900,00 | | Не включена | |
| Инвестиционный центр | 3.408.747,64 | | Не включена | |
| Инвесткои-Сити Монумт | 2.154.111,44 | | Не включена | |
| ИП Вахуна А. В. | 48.497,57 | | Не включена | |
| ИП Громова А.В. | 7.419,36 | | Не включена | |
| ИП Южонов В.В. | 900.445,00 | | Не включена | |
| ИП Ксиалев С.А. | 101.260,00 | | Не включена | Прошёл срок давности |
| Инхасов А. Э. | 968.355,85 | | Не включена | |
| | | | | |
| Канитчигов С. П. | 1.182.497,18 | | Не включена | |
| Кафедри ООО. | 396.447,10 | | Включена | |
| Ключин Василий Вжсильевич | 3.838.138,50 | | Не включена | Прошёл срок давности |
| | | | | Прошёл срок давности |
| КОНЬШЕВА Ю.В. | 212.184,91 | | Не включена | |
| | | | | |
| Косииский.13 | 220.250,00 | | Не включена | Прошёл срок давности |
| Креаов А. Ю. | 465.160,76 | | Не включена | |
| | | | | |
| КРЕАТИВ | 492,79 | | Не включена | |
| ЛАБУТИН Г.Н. | 848.739,64 | | Не включена | 000088 |
| | | | | |
| Леон-Сити | 86.100,00 | | Не включена | |

C1

| Контрагент | Сальдо на конец периода (на 23.09.13) | | Включение задолженность в фин. модель | Примечание |
|---|---|---|---|---|
| | Дебет | Кредит | | |
| Лесма-СТ ООО, Москва | 192.114,74 | | Не включена | |
| ЛОТП ООО | 0,01 | | Не включена | |
| Лукио Инвестментс Лимитед | 106.123,74 | | Не включена | |
| М.Розничная, ЗАО | 64.900,00 | | Не включена | |
| МаГМА | 6.806,45 | | Не включена | |
| М" групп ООО быв Мираж-Групп | 951.576,00 | | Не включена | |
| МДМ-Недвижимость ЗАО | 59.000,00 | | Не включена | |
| Мед центр-гринвалэа и регал. | 978.125,00 | | Не включена | |
| Медел РУС ООО | 342.657,84 | | Не включена | |
| Мир высотных зданий, ООО | 4.747.276,81 | | Включена | Внутрикорпоративная зад-сть |
| Мир строительных технологий | | | Не включена | |
| Мирамс | 81.125,00 | | Не включена | |
| Мойет ООО | 23.916.024,12 | | Не включена | |
| Монолитный дом | 51.125,00 | | Не включена | |
| Московская Инженерн. Компания | 7.269.672,72 | | Не включена | |
| | 88.650,00 | | Не включена | Внутрикорпоративная зад-сть |
| Меркури Классик 2000 | 2.247.018,04 | | Не включена | Прошёл срок исковой давности |
| Меркури Холдинг 2000 | 2.253.465,03 | | Не включена | Прошёл срок исковой давности |
| Н-Профи ОГРН 1047796084600 | 241.008,75 | | Не включена | Прошёл срок исковой давности |
| Новая Индустрия ООО | 767.000,00 | | Не включена | |
| Обшехол, ООО | 400.000,02 | | Включена | |
| Ортехо-Групп | 1.130.827,36 | | Не включена | Прошёл срок исковой давности |
| Основака Мостов | 499.765,89 | | Не включена | |
| Таулькин | 1.614.888,80 | | Не включена | |
| Пектроков. Уделов  65 от | 602.612,71 | | Не включена | Прошёл срок исковой давности |
| Плаза Альфа | 868.497,08 | | Не включена | Прошёл срок исковой давности |
| Плаза Бета | 388.497,08 | | Не включена | Прошёл срок исковой давности |
| Плаза-Гамма | 388.497,08 | | Не включена | Прошёл срок исковой давности |
| Прайг Бутик Лярж ООО | 437.713,82 | | Включена | |
| Проектное бюро "Римакс", ООО | 50.000,00 | | Не включена | |
| | 57.096,77 | | Не включена | Внутрикорпоративная зад-сть |
| ПромОрдер Центр | 190.026,86 | | Не включена | |
| Проминвест | 0,01 | | Не включена | |
| Профи-Персонал ООО | 385.711,50 | | Не включена | |
| Профстрой ООО | 324.686,44 | | Не включена | |
| ПСП-Фарман ООО | 8.094.101,85 | | Не включена | |
| ПСФ Стройнонтаж ООО | 192.125,00 | | Не включена | |
| Регион-Инжиниринг | 323.338,58 | | Не включена | |
| Рентек | 236.632,10 | | Не включена | Прошёл срок исковой давности |
| Родионов П. И. | 420.174,48 | | Не включена | Прошёл срок исковой давности |
| РР-Инвест, ООО | 142.138,87 | | Не включена | |
| РСУ Альфа ООО | 95.878,00 | | Не включена | |
| Русская торговая компания | 2.250.452,35 | | Не включена | Прошёл срок исковой давности |
| С-МАХ | 2.238.305,18 | | Не включена | Прошёл срок исковой давности |
| СДС-ТОРГ ООО | 111.553,33 | | Не включена | |
| Семь ИСК ООО | 3.804,63 | | Не включена | |
| Сили Билдинг, ООО | 13.275,00 | | Не включена | |
| Сили-девелопмент, ООО | 79.800,00 | | Не включена | |
| СилкСтрой, ООО | 515.901,61 | | Не включена | |
| СК ЗАО | 1.177.566,94 | | Не включена | |
| СК Стройнонтаж ЗАО | 118.020,00 | | Не включена | |
| Синдерова Л.А. (эксом) | 96.899,69 | | Включена | |
| Специгазобетонстрой | 165.691,34 | | Не включена | |
| Стальмонтаж | 2.233.515,44 | | Включена | |
| Столешный угас | 47.853,17 | | Не включена | |
| СТРОИ-ЭЛКОМ | 2.240.019,86 | | Не включена | Прошёл срок исковой давности |
| Стройконтракт | 914.000,00 | | Не включена | |
| СтройМастер, ООО | 36.666,61 | | Не включена | |
| Стройконтан-Авто ООО | 32.736,66 | | Включена | |
| СтройконтанМаунт ЗАО | 892.376,00 | | Не включена | |
| СтройМонтажэкология, ООО | 51.307,10 | | Не включена | |
| СтройМонтажПроминжех 321 | 400.000,00 | | Не включена | |
| ТеплоСтройГеометриал | 181.419,35 | | Не включена | |
| Тердавён Лтд Брит Вирг. Ост-ва | 162.411,20 | | Не включена | |
| Терогтаван удостоительства ООО | 35.010.578,89 | | Не включена | |
| ТехМаш ООО | 139.040,64 | | Включена | |
| Технолоты Стр-во Инжинир ООО | 245.461,65 | | Не включена | |
| Тиоомбфит Элеватор, ООО | 744,66 | | Не включена | |
| ТОРНТОН-ТОМАСЕТТИ (прод-во) | 101.690,36 | | Не включена | |
| ТОРЭКС | 35.615,68 | | Не включена | |
| Транс Н.Строй | 64.457,00 | | Не включена | |
| Трансмонолит ЗАО Филиал № 1 | 608.213,56 | | Не включена | |
| УК Поток Бесконечность | 608.718,16 | | Не включена | |
| | 1.180.000,00 | | Не включена | Внутрикорпоративная зад-сть |
| Фили-Недвижимость | 1.216.976,00 | | Включена | |
| Финла медиа | 1.600.000,00 | | Включена | |
| Флоснигро | | | Не включена | |
| Флекс-Про | 40.623,40 | | Не включена | |
| Центральная Энергетическая ком. | 193.632.299,47 | | Не включена | |
| Шаховлен Елена Васильевна | 1.538.782,88 | | Не включена | Прошёл срок исковой давности |
| ШЕВЕЛЕВА В.В. | 494.369,82 | | Не включена | Прошёл срок исковой |
| Шелькмн Юлиде Алоизиоку. | 2.589,60 | | Не включена | |

| Счет | Сальдо на конец периода (на 23.09.13) | | Включение/ невключение задолженности в фин. модель | Примечание |
|---|---|---|---|---|
| | Дебет | Кредит | | |
| Контрагенты | | | | |
| ШИШКОВ И.В. | 212,184,91 | | Не включена | |
| ШОН ООО | 144,009,50 | | Не включена | |
| Эффект Интернешнл  ООО | 2.105,89 | | Не включена | |
| ЭВАЛАР | 648.826,96 | | | Прошел срок Давности |
| | 13.400.876,00 | | Не включена | Внутрикорпоратив |
| Эксплуатация высотных зданий | | | | |
| | 13.449.320,10 | | | Прошел срок исков давности |
| ЭкспрессТур | | | | |
| | 642.340,40 | | Не включена | |
| ЭлитСтройДом ООО | 601.810,64 | | Не включена | |
| Энергосвязькомплекс, ООО | 1.340.449,92 | | Не включена | |
| Юнайс Фасад ООО | 709.600,00 | | Включено | |
| ЮНИКОРБАНК | 566.863,13 | | Не включена | Прошел срок иск давности (с |
| Юнистрим | | | | |
| Юридическая фирма "АВРОРА" ООО | 40.000,00 | | Не включена | |
| 62.02 (Расчеты по авансам полученным) | 0,00 | 8.900.374,61 | | |
| 62.02 (Расчеты по авансам полученным) | | 8.174,59 | | |
| ЛОГГИ ООО | | -0,01 | Не включена | |
| Эфей ООО | | 60,00 | Не включена | |
| | | 8.114,60 | Не включена | |
| Цефлер Интернешнл  Ко | 0,00 | 5.082.395,31 | | |
| 62.02.1 (Авансы полученные) | | 61.172,34 | Не включена | |
| Аптека-А.в.1 | | 90.814,40 | Не включена | |
| Банк ВТБ (ОАО) | | 348.600,00 | Не включена | |
| Грейд-Вакия ООО | | 12.000,00 | Не включена | |
| ЗЕНИТ  ОАО | | 199.724,52 | Не включена | |
| Кофе Сирена ООО | | 68.065,67 | Не включена | |
| КОФЕПОРТ ООО | | 730.573,24 | Не включена | Внутрикорпоративно сть |
| Мир высотных зданий, ООО | | | | |
| | | 2.273.090,63 | Не включена | |
| Мирикс | | 133.500,00 | Не включена | |
| НТК Интурист ООО | | 707.375,00 | Не включена | |
| Открытое пространство, ООО | | 97.645,35 | Не включена | |
| СК ВТБ СТРАХОВАНИЕ | | 304.250,00 | Не включена | Внутрикорпоративно сть |
| Стройконтэк-Капитал, ЗАО | | | | |
| | | 115.000,00 | Не включена | |
| ТРИАР, ООО | | 72.049,75 | Не включена | |
| Триэкс ООО | | 405.830,41 | Не включена | |
| Фуланико | | 65.000,00 | Не включена | |
| Эдвинс Холдинг | | 3.200.604,61 | Не включена | |
| 62.02.2 (Обеспечительный платеж) | 0,00 | 447.000,00 | Не включена | |
| Аптека-Б.в.-1 | | 6.000,00 | Не включена | |
| ЗЕНИТ  ОАО | | 38.333,34 | Не включена | |
| ИП Громов А.П. | | 199.724,52 | Не включена | |
| Кофе Сирена ООО | | 60.867,67 | Не включена | |
| КОФЕПОРТ ООО | | 1.564.210,00 | Не включена | |
| Мирикс | | 170.884,58 | Не включена | |
| СК ВТБ СТРАХОВАНИЕ | | 230.000,00 | Не включена | |
| ТРИАР, ООО | | 132.234,50 | Не включена | |
| Триэкс ООО | | 354.760,00 | Не включена | |
| ЮНИКОРБАНК | | 0,00 | | |
| 62.21 (Расчеты с покупателями и заказчиками в валюте) | 68.456.629,30 | | Не включена | |
| Gelut Trading Limited | 12.628.413,14 | | Не включена | |
| Чиркало Цамбовичи | 45.828.219,16 | | | |
| 62.31 (Расчеты с покупателями и заказчиками в у.е.) | 68.686.210,57 | 10.185.731,28 | | |
| Алятин А.А. | | 10.185.731,28 | Включена | Предложено расторжения до конца дан. де |
| | 14.230.417,60 | | Не включена | |
| Ант Япы Санайи ве Тиджарет | 3.556.557,34 | | Не включена | Имеется встреч зад-сть |
| АРМО-ГРУПП, ЗАО | | | | |
| | 260.953,17 | | Не включена | |
| Башня Федерации в Москве, Герм | | | | |
| | 1.661.511,98 | | Не включена | Имеется встреч зад-сть |
| ВИСК | | | | |
| | 21.565.214,68 | | Включена | |
| Голбев В. С. | 23.498,96 | | Не включена | Имеется встреч зад-сть |
| ПСП-Фарман ООО | | | | |
| | 5.056.465,23 | | Не включена | Имеется встреч зад-сть |
| Тиссенкрупп Элеватор, ООО | | | | |
| | 2.671,94 | | Не включена | Имеется встреч зад-сть |
| ТОРНТОН-ТОМАСЕТТИ (пред-во) | | | | |
| | 17.964,24 | | Не включена | Имеется встреч зад-сть |
| Шпильман Юлиус Блюменкин | 31.974,02 | | Не включена | Имеется встреч зад-сть |
| Эффект Интернешнл  ООО | | | | |
| | 1.960.971,55 | | Не включена | Имеется встреч зад-сть |
| Юнайс Фасад ООО | | | | |
| 62.32 (Расчеты по авансам полученным (в у.е.)) | 0,00 | 154.097,62 | | |
| Асто ООО | | 57.198,00 | Не включена | |
| ИП Кнушин В.В. | | 96.782,62 | Не включена | |
| Раннбог ООО | | 1,20 | Не включена | |
| Эдвинс-С | | 78,80 | Не включена | |
| 66 (Расчеты по краткосрочным кредитам и займам) | 0,00 | 2.120.863.165,78 | | |
| | | 1.375.539.129,54 | | |
| 66.03 (Краткосрочные займы) | | 964.487.200,00 | Не включена | |
| АВАНТА ООО | | 901.966.060,58 | Не включена | |
| Далект Энтерпрайзес Лимитед | | 17.389.864,72 | Не включена | |
| Инвест-Газ (Москва) (КПП111 | | 10.416.184,24 | Не включена | |
| Открытое пространство, ООО | | 61.300.000,00 | Не включена | |
| САНВИЛ ТРЕЙДИНГ ЛИМИТЕД | | 218.955.084,50 | | |
| 66.04 (Проценты по краткосрочным займам) | | 85.984.875,70 | Не включена | |
| АВАНТА ООО | | 121.083.843,00 | Не включена | |
| Далект Энтерпрайзес Лимитед | | 1.504.300,40 | Не включена | |
| Инвест-Газ (Москва) (КПП111 | | 3.183.343,06 | Не включена | |
| Открытое пространство, ООО | | 98.618.893,16 | Не включена | 000062 |
| САНВИЛ ТРЕЙДИНГ ЛИМИТЕД | | 354.447.674,13 | | |
| 66.23 (Краткосрочные займы (в валюте)) | | 12.868.323,32 | Не включена | |
| RONWORTH TRADING LIMITED | | 59.240.866,68 | Не включена | |
| Иглер СовСтратпинс Б. В. | | | | |

Счет

| | Сальдо на конец периода (на 23.08.13) | | Включенная / исключенная задолженность в Фин. модель | Примечание |
|---|---|---|---|---|
| | Дебет | Кредит | | |
| **Контрагенты** | | | | |
| ЭСКЛАТОН | | | | |
| 66.24 (Проценты по краткосрочным займам (в валюте)) | | 302.538.465.23 | Включена | |
| RONWORTH TRADING LIMITED | | 172.121.707.81 | | |
| Мороко Сим/Серейчик Б. В. | | 5.747.607.96 | Не включена | |
| ЭСКЛАТОН | | 13.632.128.26 | Не включена | |
| | | 162.741.681.67 | Включена | |
| 67 (Расчеты по долгосрочным кредитам и займам) | | | | |
| 67.21 (Долгосрочные кредиты (в валюте)) | 0.00 | 3.702.327.740.31 | | |
| Сбербанк России ЦО | | 3.702.327.740.31 | | |
| 67.22 (Проценты по долгосрочным кредитам (в валюте)) | | 3.702.327.740.31 | | |
| Сбербанк России ЦО | | | Включена | |
| | | | | |
| 68 (Расчеты по налогам и сборам) | | | | |
| 68.01 (Налог на доходы физических лиц) | 0.00 | 40.159.205.25 | | |
| 69 (Расчеты по социальному страхованию и обеспечению) | 0.00 | 40.159.205.25 | Включена | |
| 70 (Расчеты с персоналом по оплате труда) | 0.00 | 31.302.401.96 | Включена | |
| 76 (Расчеты с разными дебиторами и кредиторами) | 0.00 | 20.756.192.00 | Включена | |
| 76.03 (Расчеты по причитающимся дивидендам и другим доходам) | 11.787.186.09 | 454.077.156.18 | | |
| БАРИСТОН | | 10.000.00 | Не включена | |
| Мосэнергострой OAD | | 10.000.00 | | |
| 76.22 (Расчеты по претензиям в валюте) | 11.687.455.89 | | Не включена | Прошел срок исковой давности |
| Шеньянг Юрий Алексеевич | 99.742.20 | | | |
| Договор № 436 от 24.09.05. | 99.742.20 | | | |
| | 99.742.20 | | | |
| 76.39 (Прочие расчеты с инвесторами (в у.е.) | | | Включена | Будут погашаться выключенными работник |
| АВАНЕСОВ К.А. | 0.00 | 454.067.156.18 | | |
| Договор № ст.1/ДК-67 от 08.04.2010г. | | 24.655.293.97 | | |
| КОНКОРДИЯ - ассет менеджмент | | 24.655.293.97 | Включена | Частично |
| Дог.ген. № 6156 от 06.12.2005г. | | 429.611.862.22 | | |
| | | 429.611.862.22 | Не включена | |
| **Итого** | | | | |
| **Итого** | **3.564.365.515.41** | **7.213.807.553.03** | | |

Примечание:
1) Также имеется кредиторская задолженность, которая рассматривается в суде, по компаниям:
- ДЖЕЙСОН МЕНЕДЖМЕНТ ИНК (WERTON A TRADING LIMITED) в размере 18 330 315,00 долл.США + 343 181 961,00 руб.;
- Дотель в размере 78 868 797,01 руб. + 6 692 303,04 руб.;
- КОМПАНИЯ АНРАМЕО ХОЛДИНГ'З ЛИМИТЕД в размере 21 845 730,30 руб.;
- Индастри-Констракшн в размере 00 610 692,80 руб.;
- ИП Катранова Елена Васильевна в размере 921 065,73 руб.;
- СтройМонтажУправление 321 в размере 636 400,00 руб.;
2) По Центральной Энергетической Компании в 1С указана кред. зад-сть в размере 36 427 427,95 руб.,
- в суде дело на сумму 85 405 202,67 руб.

S/I. Rep                    N.H. Kaijer

000063



MRC Skyscrapers
Management B.V.

S.I. Rep

N.H. Raijer

Intertrust (Netherlands) B.V.
Managing Director

000064

Deed of Accession to the Agreement 

**DEED OF ACCESSION TO THE AGREEMENT** dated December __, 2016, signed by **NEW TOWER LIMITED** a company formed and registered in accordance with the legislation of the Republic of Cyprus on 03.11.2015 under the registration number 348440, address: Vyzantiou, 11, 1st floor, Strovolos, 2064, Nicosia, Cyprus (**Binding party**).

SUPPLEMENT to the Project Management Agreement ("Agreement") dated December 6, 2013 entered into by and between (1) **MRC Skyscrapers Management B.V.**, a company incorporated under the laws of the Netherlands under registration number 27269773 at the address: Prins Bernhardplein 200, 1097 JB, Amsterdam, the Netherlands, and **ROMAN VIKTOROVICH TROTSENKO**, a citizen of the Russian Federation (passport series 45 10 No. 482334, issued by the Otradnoye District Department of the OUFMS of Russia for Moscow, place of residence: Apt. 161, 18 "V" Altufievskoye Shosse, Moscow (together hereinafter referred to as the "**Shareholder**"), on the one hand, and (2) **DMITRY VALERIEVICH LUTSENKO**, a citizen of the Russian Federation, passport No.4002 180226, residing at: Apartment 8, 1 Naberzhnaya reki Fontanki, Saint-Petersburg, Russian Federation (hereinafter referred to as the "**Project Manager**"), on the other hand.

SUBSTANTIAL PROVISIONS:

1.   The Binding Party confirms that a copy of the Agreement has been provided to it and it has acquainted itself with the copy, and assumes an obligation to each of the other parties to the Agreement to observe all terms and conditions and be bound by all terms and conditions of the Agreement as if it were a party to the Agreement, and not to do acts that would contradict the terms and conditions of the Agreement.

2.   This Deed shall be governed by the law of England and Wales and shall be construed in accordance therewith.

C2

EXECUTED as a deed on the date first above written.

**NEW TOWER LIMITED**

Signature: _____   Signature: _____

Name: _____   Name: _____

Title: _____   Title: Witness

**MRC SKYSCRAPERS MANAGEMENT B.V.**

Intertrust (Netherlands) B.V.
Managing Director

Signature: _____   Signature: _____

J.A.W. van de Bool
Proxy Holder

Name: _____   Name: _____

S.V.C. Hoogstrate-Roell
Proxyholder

Title: _____   Title: _____

16.0x 2017   16.0x 2017

**ROMAN VIKTOROVICH TROTSENKO**

Signature: _____   Signature: _____

Name: _Inna Shrinskaya_

Title: Witness

**DMITRY VALERIEVICH LUTSENKO**

Signature: _____   Signature: _____

Name: _____

Title: Witness

000002